FILED

2016 Nov-01  PM 04:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ANITA SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** |
| | ) | **2:16-CV-842-VEH** |
| **VESTAVIA HILLS BOARD OF** | ) | |
| **EDUCATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This employment discrimination action was filed on May 23, 2016, by the Plaintiff, Anita Smith, against the Defendant, the Vestavia Hills Board of Education. The Plaintiff alleges that the Defendant discriminated against her on account of her race, African American, and her age, over 50. The Plaintiff also alleges that the Defendant retaliated against her after she complained of illegal discrimination, and after she filed a charge of discrimination with the EEOC. The Complaint alleges: race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("Section 1981") (Count One); age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* (the "ADEA") (Count Two); and retaliation in violation of Title VII, the ADEA, and Section 1981 (Count Three). The Complaint

also pleads the Alabama state law claims of invasion of privacy (Count Four) and intentional infliction of emotion distress (Count Five).

This case comes before the Court on the Defendant's Motion for Partial Dismissal, made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 5). For the reasons stated herein, the motion will be **GRANTED in part and DENIED in part**.

## I.     STANDARD

Generally, the Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). However, to survive a motion to dismiss brought under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*").

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556) ("*Iqbal*"). That is, the complaint must include enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation and footnote omitted). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings

2

suffice that are based merely upon "labels or conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557 (citation omitted).

Once a claim has been stated adequately, however, "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563 (citation omitted). Further, when ruling on a motion to dismiss, a court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citing *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006)).

## II.   ANALYSIS

### A.   Invasion of Privacy (Count Four) and Intentional Infliction of Emotion Distress (Count Five) Claims

Article I, Section 14 of the Alabama Constitution provides that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.  The Alabama Supreme Court has stated:

> The wall of immunity erected by § 14 is nearly impregnable. Indeed, as regards the *State of Alabama and its agencies*, the wall is absolutely impregnable. "Absolute immunity" means just that—the State and its agencies are not subject to suit under any theory.

*Alabama Dep't of Corr. v. Montgomery Cty. Comm'n*, 11 So. 3d 189, 191 (Ala. 2008) (internal quotations and citations omitted, italics in original).  The Defendant argues that this absolute immunity bars the state law claims in Counts Four and Five.

3

The Plaintiff argues, correctly, that this immunity does not extent to a municipality or its agents.  *See Ex parte City of Tuskegee*, 932 So. 2d 895, 901 (Ala. 2005) ("Absolute immunity does not extend to municipalities or its agents."). However, the Defendant, a municipal school board, is an agent of the state, not the city.  In *Ex parte Phenix City Bd. of Educ.*, 67 So. 3d 56, 59 (Ala. 2011) the Alabama Supreme Court wrote:

> The Board contends that it is not subject to tort actions against it alleging negligent entrustment and asserting claims of loss of services because, it says, it is entitled to absolute immunity and it cites Art. I, § 14, Ala. Const. 1901. In *Enterprise City Board of Education v. Miller*, 348 So.2d 782 (Ala.1977), this Court held that city boards of education were immune from civil actions. We stated:
>
> > "City boards of education are authorized by the legislature. Title 52, Section 148, et seq. [now § 16–11–1 et seq., Ala Code 1975].
> >
> > "Like county school boards, they are agencies of the state, empowered to administer public education within the cities. As such, a city school board is not a subdivision or agency of the municipal government. *Opinion of the Justices*, 276 Ala. 239, 160 So.2d 648 (1964). A city school board's relation to the city is analogous to a county school board's relation to the county. *State v. Brandon*, 244 Ala. 62, 12 So.2d 319 (1943).
> >
> > "There is no mention in the statutes under which city school boards are created of the ability to be sued. Title 52, section 168 [now § 16–11–13], allows a city school board to institute condemnation proceedings. The only other statute which refers to litigation at all is Title 52, section

4

161 [now § 16–11–12], which provides:

> " 'The city board of education shall have the full and exclusive rights within the revenue appropriated for such purposes, or accruing to the use of the public schools, to purchase real estate, furniture, appropriate libraries, fuel and supplies for the use of the schools, and to sell the same, and to make expenditures for the maintenance and repairs of the school grounds, buildings and other property, to establish and build new schools, to superintend the erection thereof, to purchase sites therefor, to make additions, alterations and repairs to the building and other property erected for school uses, and to make necessary and proper notes, contracts and agreements in relation to such matters. All such contracts shall inure to the benefit of the public schools, and any suit in law or equity brought upon them and for the recovery and protection of money and property belonging to and used by the public schools, or for damages, shall be brought by and in the name of the city.'

> "It is clear, therefore, that there is no express language in the legislation which would allow a tort action against a city school board. Neither is there language from which legislative intent to allow such actions may be inferred. To the contrary, the legislation seems clearly to deny such suits."348 So.2d at 783–84.

City boards of education are local agencies of the State; therefore, they enjoy constitutional immunity from tort actions alleging negligent entrustment and asserting claims of loss of services. *Enterprise City Bd. of Educ., supra; Bessemer Bd. of Educ. v. Tucker*, 999 So.2d 957, 962

(Ala.Civ.App.2008) (noting that, because city boards of education are agencies of the State, they enjoy immunity from suit to the extent authorized by the legislature and further noting, as an example, that, because city boards of education are authorized to contract, they may sue and be sued on those contracts). Accordingly, the claims against the Board of negligent entrustment and asserting loss of services on behalf of the parents are barred by Art. I, § 14, Ala. Const. 1901.

*Ex parte Phenix City Bd. of Educ.*, 67 So. 3d 56, 59–60 (Ala. 2011).

For the reasons discussed in *Ex Parte Phenix City*, the state law claims in the instant case are due to be dismissed.

**B.    Section 1981 Claims**

Neither party addresses the issue of whether a state actor can be sued under Section 1981. It cannot. As the Eleventh Circuit has noted, "Section 1981 does not provide a cause of action against state actors; instead, claims against state actors or allegations of § 1981 violations must be brought pursuant to [42 U.S.C.] § 1983." *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337 (11th Cir. 2008); *see also*, *Betts v. Conecuh Cty. Bd. of Educ.*, No. CIV.A. 13-0356-CG-N, 2014 WL 7411670, at *5 (S.D. Ala. Dec. 30, 2014) (Granade, J.). Typically, the Plaintiffs' Section 1981 claims would merge into any already pleaded Section 1983 claims. *See, Jones v. Fulton Cty., Ga.*, 446 F. App'x 187, 191 n. 1 (11th Cir. 2011); *Moore v. Alabama Dep't of Corr.*, 137 F. App'x 235, 237 (11th Cir. 2005) (*citing Butts v. County of Volusia*, 222 F.3d 891, 893-94 (11th Cir.2000)). In this case, however, there are no

6

Section 1983 claims pled.

The Section 1981 claims in Counts One and Three will be dismissed.  The Plaintiff will be given leave to amend to plead those claims under 42 U.S.C. § 1983, if she so chooses.

### C.     Damages for Physical Injury

The Plaintiff seeks "damages for her physical, mental and emotional distress, embarrassment, humiliation and trauma."  (Doc. 1 at 29, ¶E).  The Defendant argues that

> nowhere in the Complaint does the plaintiff claim any physical injury from any alleged action or inaction by the Defendant Board or any of its employees. Thus, plaintiff cannot demand monetary damages for any physical injury.

(Doc. 6 at 4).  In response, the Plaintiff argues:

> Defendant asserts that Plaintiff did not plead any facts alleging physical injury caused by Defendant's actions. On the contrary, Plaintiff's Complaint alleged the following: "Plaintiff was also subjected to undue emotional and physical pain, which affected Plaintiff's health. Plaintiff was caused to lose wages and benefits, loss of reputation, embarrassment, humiliation, financial duress and trauma". (Doc. 1, ¶ 75).

(Doc. 13 at 6).  The section of the Complaint cited by the Plaintiff discusses only "physical <u>pain</u>," not physical <u>injury</u>.  Further, the cited language is merely a "naked assertion[] devoid of further factual enhancement" which the Supreme Court has said

7

will not suffice. *Iqbal*, 556 U.S. at 678. There are no facts in the Complaint supporting the Plaintiff's claim that she was physically injured by the Defendant's conduct. Accordingly, the Court will dismiss all compensatory damage claims for physical injury.

### D.   **Damages for Emotional Harm**

The Defendant also argues that, absent physical injury, the Plaintiff cannot recover for so called "emotional harm"–*i.e.* mental and emotional distress, embarrassment, loss of reputation, humiliation, and trauma. However, under Title VII, such damages are recoverable without physical injury. *See*, 42 U.S.C. §1981a(b)(3) (discussing "the amount of compensatory damages awarded under this section for . . . emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses"). Accordingly, the motion to dismiss is due to be denied as to the Title VII claims for emotional distress damages.

By contrast, "the ADEA does not permit a separate recovery of compensatory damages for pain and suffering or emotional distress." *C.I.R. v. Schleier*, 515 U.S. 323, 326, 115 S. Ct. 2159, 2162, 132 L. Ed. 2d 294 (1995); *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1446 (11th Cir. 1985); *Maples v. UHS of Georgia, Inc.*, 716 F. Supp. 2d 1266, 1273 (N.D. Ga. 2010) (Johnson, J.); *Burkhart v. Chertoff*, No. 206CV690FTM99DNF, 2009 WL 32888, at *3 n. 3 (M.D. Fla. Jan. 6, 2009) (Steele,

J.); *Morris v. Arizona Beverage Co.*, No. 03-60907 CIV, 2005 WL 5544961, at *7, n. 5 (S.D. Fla. Feb. 9, 2005) (Garber, M.J.). The Court will dismiss all claims for compensatory damages for pain and suffering and emotional distress brought pursuant to the ADEA.

### E.    Punitive Damages

The Defendant claims that all of the Plaintiff's punitive damages claims, no matter the basis for relief, are due to be dismissed.  The Plaintiff has not addressed this argument, and has not argued that she is entitled to punitive damages.

Punitive damages are not available under the ADEA. *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1446 (11th Cir. 1985) ("[N]either punitive damages nor compensatory damages for pain and suffering are recoverable under the ADEA."). *Dean v. Am. Sec. Ins. Co.*, 559 F.2d 1036, 1040 (5th Cir. 1977);[1] *see also*, *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 938 (11th Cir. 2000) (discussing *Dean*). Further, under Title VII, punitive damages are not available against government entities like the Defendant.  42 U.S.C.A. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (other than a

---

[1]   In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down on or before September 30, 1981.

government, government agency or political subdivision).”). *Young v. City of Mobile*, No. CIV.A. 13-0586-KD-B, 2014 WL 2739422, at *2 (S.D. Ala. June 17, 2014) (Dubose, J.) (“42 U.S.C. § 1981a(b)(1) precludes an award of punitive damages against a ‘government, government agency or political subdivision.’”). All claims for punitive damages will be dismissed.

### F.    Title VII Liquidated Damages

The Defendant argues that the Plaintiff is “unable to recover liquidated damages because they are unavailable under Title VII.” (Doc. 6 at 5).  The Plaintiff states that she “did not demand liquidated damages under Title VII.” (Doc. 13 at 6). Accordingly, in the interest of clarity, the Court will dismiss any liquidated damages claims made under Title VII.

### G.    ADEA Compensatory Damages

The Defendant seeks dismissal of claims for “compensatory . . . damages under the ADEA.” (Doc. 6 at 5).  The Plaintiff states that she “did not demand compensatory damages under the ADEA.” (Doc. 13 at 6).   Accordingly, in the interest of clarity, the Court will dismiss any compensatory damages claims made under the ADEA.

### H.    Post-Termination Retaliation Claims

“In order to litigate a claim for discrimination under Title VII . . . or the ADEA

a plaintiff must first exhaust his administrative remedies, beginning with the filing of a charge of discrimination with the EEOC." *Rizo v. Alabama Dep't of Human Res.*, 228 F. App'x 832, 835 (11th Cir. 2007) (*citing Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001)).   Thereafter, a plaintiff must file a  Complaint within ninety days of her receipt of the EEOC's right-to-sue letter. *See* 42 U.S.C. § 2000e–5(f)(1); *Green v. Union Foundry Co.*, 281 F.3d 1229, 1234 (11th Cir. 2002). "[R]eceipt of a right-to-sue letter is a condition precedent to a . . . claim rather than a jurisdictional prerequisite." *Pinkard v. Pullman-Standard, a Div. of Pullman, Inc.*, 678 F.2d 1211, 1215 (5th Cir. Unit B 1982)[2]; *Wilkerson v. H & S, Inc.*, 366 F. App'x 49, 51 (11th Cir.2010) (per curiam) (*citing Forehand v. Fla. State Hosp. at Chattahoochee*, 89 F.3d 1562, 1569–70 (11th Cir.1996); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398, 102 S.Ct. 1127, 1135, 71 L.Ed.2d 234 (1982)); *Forehand*, 89 F.3d at 1567; *Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1524 (11th Cir. 1983).   The precondition is subject to  equitable modification. *Wilkerson*, 366 F. App'x at 51; *Forehand*, 89 F.3d at 1569–70.   "That is, under appropriate circumstances, the plaintiff will be excused from the exhaustion

---

[2]   The Eleventh Circuit has adopted as binding precedent all decisions issued by a Unit B panel of the former Fifth Circuit. *Federated Bank v. F.D.I.C.*, 645 F. App'x 853, 858 (11th Cir. 2016) (*citing Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir.1982)).

requirement if the court's consideration of the equities so warrants it." *Braden v. Piggly Wiggly*, 4 F. Supp. 2d 1357, 1363 (M.D. Ala. 1998) (Thompson, J.). "The burden of proof with respect to equitable modification remains on plaintiffs." *Forehand*, 89 F.3d at 1571; *Ramsay v. Broward Cty. Sheriff's Office*, No. 05-61959-CIV, 2007 WL 6861073, at *6 (S.D. Fla. May 24, 2007), *aff'd*, 303 F. App'x 761 (11th Cir. 2008); *Braden*, 4 F. Supp. 2d at 1363. "[I]f a claimant attempts to frustrate investigation or conciliation by the EEOC, equitable modification of the exhaustion rule may be inappropriate." *Forehand*, 89 F.3d at 1570. Further, "there is no per se rule that receipt of a right-to-sue letter during pendency of the suit always satisfies the exhaustion requirement." *Id*.

There is no doubt in this case that the Plaintiff has not yet received a right to sue letter from the EEOC with regards to her post termination retaliation claims. In her Complaint, the Plaintiff alleges:

> On August 26, 2015, within 180 days of learning of the acts of discrimination of which she complains, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC"). (Attached herein as Exhibit A). On February 26, 2016, [Plaintiff] received her Notice of "Right to Sue" regarding her charge. (Attached herein as Exhibit B). On April 20, 2016, Plaintiff filed a second charge with the EEOC due to <u>retaliation after her termination of employment</u>. (Attached herein as Exhibit C). On May 17, 2016, Plaintiff filed a revised narrative to her second charge with the EEOC to correct a clerical error. (Attached herein as Exhibit D). <u>Plaintiff has not received her right to bring suit from the EEOC on her second charge</u>, but

has included allegations pertaining to this charge in this Complaint to promote judicial economy by not splitting her claims in separate pleadings before this Court. Should her final charge be resolved by the EEOC, Plaintiff will withdraw her cause of action based upon that charge.

(Doc. 1 at 3-4) (emphasis added).  Additionally, in her brief in response to the motion to dismiss, the Plaintiff argues:

For the sake of judicial economy, it makes little sense to separate these related charges into separate causes of action. It also inefficient to require Plaintiff to file an Amended Complaint upon receipt of the right to sue on her second charge, when that charge contains the same allegations already known to the parties and this Court through her original Complaint.

Moreover, to dismiss Count III - Plaintiff's retaliation charge, would prevent Plaintiff from pursuing discovery related to this charge for the first five months of this litigation. Any witness deposed during that time, would have to be re-deposed on the retaliation allegations following the filing of an Amended Complaint. It is also likely that any Scheduling Order in this action would include a deadline for Plaintiff to amend her Complaint prior to October 2016. Such litigation realities would prejudice, and potentially bar, Plaintiff from pursuing her retaliation claim other than in a wholly separate lawsuit.

(Doc. 13 at 2).  The Plaintiff makes no "express" argument for the application of judicial estoppel here.  If the Court treats the above passages as such an argument, the Plaintiff cites no authority, and this Court has found none, for the proposition that "judicial economy" is a valid reason to ignore the condition precedent of a right to sue from the EEOC.

13

"The purpose of th[e] exhaustion requirement is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts. *Gregory v. Georgia Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (internal quotations and citations omitted). The Plaintiff does not argue that the EEOC has had an opportunity to investigate the post-termination retaliation claims. Instead, she argues:

> Because the parties are already litigating the allegations in the first EEOC charge, there is no chance Plaintiff will chose to mediate her retaliation charge through the EEOC. Further investigation by the EEOC and issuance of a Notice of Right to Sue should not, therefore, be a prerequisite to litigating Plaintiff's retaliation claim.

(Doc. 13 at 3-4). In making this argument, the Plaintiff ignores that, in addition to "promoting conciliation efforts" such as mediation, another function of the exhaustion requirement is to give the EEOC an opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance.

The Plaintiff also argues that she does not have to exhaust her administrative remedies prior to filing suit on her post-retaliation claims because they "grow out of" her previously filed charge of discrimination. The Eleventh Circuit explained this theory in *Duble v. FedEx Ground Package Sys., Inc.*, 572 F. App'x 889, 892–93 (11th

14

Cir. 2014), *cert. denied*, 135 S. Ct. 2379, 192 L. Ed. 2d 165 (2015), writing:

> It is unnecessary for a plaintiff to exhaust administrative remedies prior to filing a judicial claim of retaliation if that claim grew "out of an earlier charge," because the "the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir.1988) (*quoting Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. Unit A Aug.1981)). This exception, however, does not apply, when no other properly raised judicial claim exists to which the retaliation claim may attach.

> In *Gupta*, the plaintiff filed two EEOC charges and then commenced his lawsuit arising out of those charges. 654 F.2d at 413. While the case was pending, the plaintiff was notified his employment contract would not be renewed for the following year. *Id*. He argued the termination was a retaliatory action against him, but he never filed a charge with the EEOC alleging the retaliation. Under those circumstances, we concluded it was unnecessary for the plaintiff to file a charge with the EEOC before amending his complaint to include retaliation, because the claim grew out of the administrative charge that properly was before the district judge. *Id*. at 414.We applied the *Gupta* rule in *Baker*, where the plaintiff had filed a lawsuit in district court pursuant to a right-to-sue letter. 856 F.2d at 168. While the complaint was pending, she filed a motion for preliminary injunction and sought to enjoin allegedly retaliatory actions taken by her employer as a result of the suit. *Id*. She did not file a separate charge with the EEOC regarding these actions, and her employer argued the district judge had no jurisdiction to entertain the motion, because she had not exhausted her administrative remedies for those actions. *Id*. We held she did not have to exhaust her administrative remedies for the district judge to have jurisdiction over the motion. *Id*. at 169.

*Duble*, 572 F. App'x at 892–93.

In *Duble* the plaintiff was terminated due to a violation of his company's email

policy when an examination of the plaintiff's emails revealed inappropriate content and language. *Id.* at 891. The plaintiff had previously filed a complaint of discrimination with the EEOC and the Florida Commission on Human Relations alleging unrelated disability discrimination and retaliation based on the failure to accommodate. After the EEOC issued a finding of "no probable cause" on that complaint, the plaintiff filed a lawsuit in federal court based on both the allegations in his EEOC charge, <u>and</u> his termination. The Eleventh Circuit held

> [The plaintiff's] termination claims relate to a discrete act of alleged discrimination that occurred after he filed his initial charge pertaining to [his employer's] purported failure to accommodate. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061, 2073, 153 L.Ed.2d 106 (2002) ("Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.' "). . . . Because this case is factually distinguishable from *Gupta* and *Baker*, we conclude the *Gupta* rule does not apply. [The plaintiff's] EEOC claim was still pending, when he was terminated, ostensibly for violating [his employer's] email policy, and he had the opportunity to amend his EEOC charge or file a new charge relating to his termination. [The plaintiff], however, chose not to amend or file a new charge. Therefore, [the plaintiff] failed to exhaust his administrative remedies regarding his termination claims.

*Id.* at 893.

Here, like the plaintiffs in *Gupta* and *Baker*, and unlike the plaintiff in *Duble*, the Plaintiff's second charge of retaliation related to Defendant's refusal to rehire her was filed with the EEOC. Plaintiff was terminated on August 5, 2015. Her first charge

16

of discrimination alleged race discrimination, age discrimination, and retaliation "for [pre-termination] ... complaints of racial harassment and discrimination." (Doc. 1-1 at 7; filed August 26, 2015). Her right to sue letter on that charge was issued by the EEOC on February 26, 2016. (Doc. 1-2). She filed this lawsuit on May 23, 2016. (Doc. 1).

While Plaintiff unhelpfully failed to refer to <u>any</u> portion of her Complaint in making this argument - and such referral would seem necessary for this court to determine whether her post-termination retaliation claims in the Complaint "grew out of" her first EEOC charge, the undersigned has carefully reviewed the Complaint and finds that they do. Specifically, at page 25 of her Complaint as part of her retaliation claims (Count Three), she states, in relevant part: "[Defendant] has ignored Plaintiff in hiring decisions and refuses to interview Plaintiff." (Doc. 1 at 25 ¶ 88). Further, she alleges that

> "[s]ubsequent to the filing of [Plaintiff's] [first] EEOC charge, [Defendant] further retaliated against [Plaintiff] by refusing to consider her for multiple secretarial/bookkeeping jobs.... [Plaintiff] applied for the positions, was qualified, and passed over. White employees were hired that were less qualified. Several of the Caucasian employees were also under age forty (40). [Plaintiff] was also denied interviews for the positions she applied for. [Plaintiff] filed a second EEOC charge on April 20, 2016, (Charge #420-2016-1671) to address the continuing retaliation.

(*Id*. at 17 ¶ 52). She also alleges the following in the "Statement of Facts" portion of

17

her Complaint:

> 55. [After she was terminated, Plaintiff] then applied with [Defendant] for several clerical and bookkeeping positions for which she was well-qualified, but was never considered or interviewed for these positions. No one contacted [Plaintiff] from [Defendant] regarding any of her applications. [Defendant] completely ignored [Plaintiff's] attempt to be rehired. [Defendant's] actions were discriminatory and in retaliation for [Plaintiff] complaining internally and externally to the EEOC. At the time [Plaintiff] applied for these positions, she had twenty-seven (27) years experience as both a school secretary and bookkeeper.

> 56. On January 8, 2016, [Plaintiff] applied for the 10 month bookkeeping position which Grier had vacated. [Defendant] did not respond to [Plaintiff's] application, nor interview her. In keeping with their all-white hiring policy, [Defendant] hired another Caucasian female under age forty (40) for this position.

> 57. In February 2016, [Plaintiff] applied for the registrar's position at Vestavia East Elementary School. [Defendant] again ignored [Plaintiff's] application, did not interview her, and hired another Caucasian female to replace the prior registrar who had also been a Caucasian female. [Plaintiff] was more qualified than the Caucasian applicant who was successful in receiving this position.

> 58. On each occasion when [Plaintiff] applied to be rehired, she vastly exceeded the minimum qualifications for each of these positions and was significantly more qualified that each of the Caucasian females whom [Defendant] hired for each of these positions, including the two females under age forty (40).

(*Id*. at 18-19 ¶¶ 55 - 58).

In the instant case, the Plaintiff alleges in her Complaint several acts of refusal

to hire which occurred after she was terminated and after she filed her first EEOC

18

charge. (Doc. 1, at 17-19, ¶¶52-59). She points out comparators for both her race and age. This post-termination refusal to hire retaliation clearly could be found to "grow out of" Plaintiff's initial race discrimination, age discrimination, and retaliation EEOC charge. Accordingly, Defendant's motion to dismiss Plaintiff's post-termination retaliation claims is due to be denied under *Gupta* and *Baker*.

## I.   <u>Mental Examinations</u>

> As part of the relief requested in the Complaint, the Plaintiff asks the Court to [o]rder [Pat] Strange and the [Vestavia Hills High School] staff to engage in a comprehensive mental examination and counseling to prevent further racial harassment in any workplace where Strange may work with African-Americans in the future.

(Doc. 1 at 29). Rule 35 of the Federal Rules of Civil Procedure only allows Courts to order mental examinations of "a party," and even then only in very limited circumstances. FED. R. CIV. P. 35(a)(1). In her brief in response to the motion to dismiss, the Plaintiff argues no other basis for this relief.

First, Strange and the members of the high school staff are not <u>parties</u> to this case, and the Plaintiff provides no authority for ordering such an examination of <u>employees</u> of a party.[3] Second, Rule 35 does not contemplate that such examinations

---

[3]  The rule <u>does</u> provide that the Court "has the same authority to order a party to produce for examination a person who is in its custody or under its legal control." (FED. R. CIV. P. 35(a)(1). However, that language was added to the rule in 1970 to "settle beyond doubt that a parent or guardian suing to recover for injuries to a minor may be ordered to produce the minor for examination." (Fed. R. Civ. P. 35, comment to subdivision (a), 1970 amendment). It does

would be a form of <u>ultimate relief</u> in a case.  On the contrary, they are a form of <u>discovery</u> to be used when a party's mental condition "is in controversy."  FED. R. CIV. P. 35(a)(1).  This conclusion is buttressed by the fact that relief under Rule 35 can only be granted "on <u>motion</u> for good cause."  Fed. R. Evid. 35(a)(2)(A) (emphasis added).  The Plaintiff makes no allegation or argument that the mental condition of a party, or even an employee of a party, is "in controversy."  Accordingly, the Court cannot order the requested mental examinations.  That request for relief will be dismissed.[4]

## III.   CONCLUSION

Based on the foregoing it is hereby **ORDERED, ADJUDGED**, and **DECREED** as follows:

1.   The motion to dismiss is hereby **GRANTED** as follows:

    a.   The Invasion of Privacy claim in Count Four, and the Intentional Infliction of Emotion Distress claim in Count Five, are **DISMISSED with prejudice**.

---

not apply to employees of a party.  Indeed, the same comment notes that "[t]he amendment makes no reference to employees of a party."

   [4]  The motion only appears to attack the claim for a "comprehensive mental examination."  (*See* doc. 6 at 2 ("[P]laintiff's demand that this Court order a 'comprehensive mental examination' of Board employees is due to be dismissed."); doc. 6 at 8 ("[T]he Board, the only named defendant, should not be required to order its employees to undergo mental examinations and such a request for relief is due to be dismissed.")).

  b. All Section 1981 claims are **DISMISSED**.

  c. All compensatory damage claims for physical injury are **DISMISSED.**

  d. All claims for compensatory damages for pain and suffering and emotional distress, brought pursuant to the ADEA, are **DISMISSED with prejudice**.

  e. All claims for punitive damages are **DISMISSED with prejudice**.

  f. All liquidated damages claims made under Title VII are **DISMISSED with prejudice**.

  g. All compensatory damages claims made under the ADEA are **DISMISSED with prejudice**.

  h. The Plaintiff's request for relief in the form of a comprehensive mental examination of Pat Strange and the Vestavia Hills High School staff is **DISMISSED with prejudice**.

2. In all other respects, the motion is **DENIED**.

**DONE** and **ORDERED** this 1st day of November, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge