# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **ANITA SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** |
| | ) | **2:16-CV-842-VEH** |
| **VESTAVIA HILLS BOARD OF** | ) | |
| **EDUCATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Anita Smith ("Plaintiff" and/or "Smith") has sued her former employer, the Vestavia Hills Board of Education ("Defendant," "VHBE," and/or the "Board") for race discrimination in violation of: Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through 2000e-17 ("Title VII"); 42 U.S.C. §§ 1981 and 1981(a) ("Section 1981"); and 42 U.S.C. § 1983 ("Section 1983").  (Doc. 21, Count One).  She also claims she was discriminated against based on her age, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 (the "ADEA").  (Count Two).  Finally, she claims that Defendant retaliated against her, in violation of Title VII, Section 1981, and the ADEA, after she opposed the

1

Defendant's alleged discrimination against her. (Count Three).

This case is now before the Court on: Defendant's Motion for Summary Judgment (doc. 34); Plaintiff's Motion To Strike Undisclosed Witnesses (doc. 53); Plaintiff's Motion To Strike Declarations (doc. 54); Plaintiff's Motion To Strike Court Document 55, Defendant's Response in Opposition to Plaintiff's Objection and Motion To Strike (doc. 56); Defendant's Motion To Strike Plaintiff's Exhibit 2 Attached to Her Response in Opposition to Defendant's Motion for Summary Judgment[1] (doc. 60); Defendant's Motion To Strike Plaintiff's Exhibits 5, 9, 10 and 21 (doc. 62); Defendant's Motion To Strike Plaintiff's Exhibit 16 (doc. 63); Defendant's Motion To Strike Plaintiff's Citations to Articles (doc. 64); and Defendant's Motion To Strike Portions of Plaintiff's Response Brief (doc. 65). The motions are fully briefed and are under submission. (*See* docs. 55, 57, 58, 59, 66, 68, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, and 82). After careful review, and for the reasons explained below, Defendant's Motion for Summary Judgment is due to be **GRANTED**. Plaintiff's and Defendant's motions to strike are due to be **GRANTED** and/or **DENIED** as set out herein.

---

[1] All of Defendant's motions to strike reference Plaintiff's evidence, citations, and/or argument in response to Defendant's Motion for Summary Judgment. Accordingly, for the sake of brevity, the Court will not continue to add this language.

## II.    CHALLENGES TO THE RULE 56 FILINGS

Before the Court reaches the merits of Defendant's Motion for Summary Judgment, it must determine what evidence and/or portions of briefs are due to be excluded. In order to make that determination, the Court must first decide which pleadings will be considered. Thus, the Court turns first to Plaintiff's Motion To Strike Court Document 55, Defendant's Response in Opposition to Plaintiff's Objection and Motion To Strike.  (Doc. 56).

This motion (doc. 56) seeks to strike Defendant's response in opposition to one of Plaintiff's motions to strike. The basis for the motion is that it was untimely under the Court's briefing schedule. And it was. Nevertheless, the Court declines to exclude Defendant's response. Plaintiff has addressed the merits of Defendant's response by filing a reply. (Doc. 66). Accordingly, the Court cannot discern any prejudice suffered by Plaintiff as a result of Defendant's untimely response brief.

Having decided what pleadings to allow, the Court now turns to the parties' multiple filings on alleged briefing violations and evidentiary issues.[2] Plaintiff and

---

[2] Fortunately, another judge of this district has recently dealt with many of the legal issues encompassed within the evidentiary arguments presented in these motions. *Brandon v. GlaxoSmithKline, LLC*, No. 7:15-cv-01804-RDP, 2017 WL 2876184 (July 6, 2017) (Proctor, J.) The Court has reviewed that well-written decision and finds it to be fully supported by the authorities cited therein. Accordingly, the Court has copied verbatim portions of that judge's statement of those authorities, and then has applied those authorities to the issues raised by the parties in this case.

Defendant both challenge significant portions of the record presented by the opposing party. Plaintiff seeks to exclude the declarations[3] of Dr. Mark Richardson, Dr. Tyler Burgess, Grace Hicks, and Dawn Skewes because these individuals were not disclosed until after discovery had closed. (Doc. 53).[4] Plaintiff also seeks to exclude, as "sham declarations," the declarations of Tim Loveless and Sheila Phillips, and to exclude the declaration of Grace Hicks for Defendant's failure to timely disclose her. (Doc. 54). Plaintiff also seeks to exclude certain portions of the declarations of Tim Loveless and of Grace Hicks as hearsay, unsupported ultimate conclusions, and/or irrelevant. (Doc. 54). Defendant asks the Court to strike various exhibits submitted by Plaintiff in opposition to the Motion for Summary Judgment. (Docs. 60, 61, 63, and 64). Defendant asserts that: Plaintiff's Exhibit 2 is irrelevant (doc. 60); portions of Plaintiff's Exhibits 5, 7, 9, 10 and 21 are improper summaries (doc. 61); four documents within Plaintiff's Exhibit 16 have not been authenticated (doc. 63); and Plaintiff's citations to unauthenticated law review articles and websites should be struck (doc. 64). Defendant also objects to the portions of Plaintiff's brief in opposition to summary judgment that refer to these unauthenticated law review

---

[3] The parties refer to the "affidavits" which were submitted as "declarations." For ease of reference, and because it is a distinction without a difference, the Court follows their lead.

[4] To the extent that Plaintiff is seeking rulings now about trial witnesses, the Court declines her invitation to make that determination at this stage of the proceedings.

articles and websites, and objects to facts that are improperly contained without citation to the evidentiary record in Plaintiff's response to Defendant's statement of undisputed facts. (Doc. 65).[5] Finally, Defendant asks the Court (doc. 65) to strike those portions of Plaintiff's brief opposing summary judgment (doc. 68) that fail to comply with Appendix II to this Court's Uniform Initial Order (doc. 10).

## A.     Plaintiff's Rule 26 Challenges

Plaintiff's Rule 26 challenges are set out both in documents 53 and 54.[6] Specifically, she asks this Court to exclude the declarations of Dr. Mark Richardson, Dr. Tyler Burgess, Grace Hicks, and Dawn Skewes. She states that, in violation of FED. R. CIV. P. 26, none of these individuals were identified by Defendant prior to the close of discovery. Accordingly, she says, their declarations must be struck. FED. R. CIV. P. 37(b)(2)(A) and (c)(1).

Defendant responds that these individuals were timely disclosed and/or otherwise known to Plaintiff. (Doc. 55). Defendant states: (1) Grace Hicks and Dawn

---

[5] Plaintiff also seeks to strike from consideration a court opinion issued by this Court in another case. (Doc. 53). The basis for this request is that the opinion was not timely disclosed. This argument is without merit.

[6] The Court here only refers to the Rule 26 challenge to the Hicks declaration. In document 54, Plaintiff also seeks to strike the declarations of Tim Loveless and of Sheila Phillips on the basis that they are "sham" declarations, and to exclude portions of the Loveless declaration, and portions of the declaration of Grace Hicks, as hearsay, unsupported ultimate conclusions, and/or irrelevant. These arguments are not addressed in this portion of the Court's opinion.

Skewes were listed in plaintiff's Third Amended Initial Disclosures;[7] (2) Defendant's Initial Disclosures provided the following: "Defendant also identifies any other individual listed in plaintiff's Rule 26 disclosures, any party's deposition, plaintiff's witness list and plaintiff's responses to discovery requests;" and (3) additionally, all of these individuals' identities and positions with Defendant were disclosed to Plaintiff numerous times throughout discovery in this case, both during depositions and in documents produced in response to Plaintiff's multiple Request for Production of Documents. Defendant then listed, as to each individually challenged declarant, multiple examples of such disclosures.

In reply (doc. 66), Plaintiff disagrees with Defendant's interpretation of Rule 26, says that this Court's Order (as "always understood" by Plaintiff's counsel) is broader than Rule 26, and posits several questions. However, Plaintiff intentionally omits language that makes clear that her counsel's "understanding" is not supportable. Specifically, Plaintiff quotes (only) the following language as the basis for this "understanding":

> Here, the Court's Scheduling Order provides that "**no person may testify whose identity, being subject to disclosure or timely requested in discovery, was not disclosed in time to be deposed or to permit the substance of his knowledge and opinions to be ascertained**."

---

[7] A copy of which is attached to Defendant's response.

(Doc. 66 at 4)(emphasis in original). By omitting the context, and indeed, <u>by omitting the first portion of the sentence she does set out</u>, the Court can only conclude that Plaintiff seeks to mislead.[8] That effort fails, as does Plaintiff's argument that this Court has imposed through its Scheduling Order disclosure obligations broader than those set out in Rule 26.

Turning now to Rule 26, the Court notes that a party generally is required to disclose the names of individuals likely to have discoverable information that will be used to support a claim or defense. FED. R. CIV. P. 26(a)(1)(A). This initial disclosure must be supplemented in a timely manner if the initial disclosure was materially incomplete "and <u>if</u> the additional or corrective information has not otherwise been made known to the other parties during the discovery process." *Id.* 26(e)(1)(A)(emphasis supplied). Rule 37 prohibits a party from using a witness's testimony to support a motion if it has failed to identify that witness in accordance with Rule 26, <u>unless the failure to disclose was substantially justified or harmless</u>.

---

[8] The entire paragraph Plaintiff quotes reads:

> **<u>Non-expert witnesses and exhibits not so disclosed and listed will not be permitted at trial except for impeachment or rebuttal, and no person may testify whose identity, being subject to disclosure or timely requested in discovery, was not disclosed in time to be deposed or to permit the substance of his knowledge and opinions to be ascertained.</u>**

(Doc. 17 at 2) (emphasis in original).

FED. R. CIV. P. 37(c)(1)(emphasis supplied).

The Court has reviewed Defendant's detailed and extensive list of its disclosures of these declarants, and finds that said disclosures not only informed Plaintiff of the names of the declarants, but did so in such a way that the facts to which they could likely testify was clear. For that reason, the Court finds that, as to each such declarant, Plaintiff's request to exclude the declarations based on Rule 26 is due to be denied.

### B.    Challenges to Declarations

Plaintiff's asks the Court (doc. 54) to strike the declarations of Tim Loveless and of Sheila Phillips on the basis that they are "sham" declarations.[9] She also seeks to exclude portions of the Loveless declaration, and portions of the declaration of Grace Hicks, as hearsay, unsupported ultimate conclusions, and/or irrelevant.[10]

"A court may determine that an affidavit is a sham when it contradicts previous deposition testimony and the party submitting the affidavit does not give any valid explanation for the contradiction." *Latimer v. Roaring Toyz*, 601 F.3d 1224, 1237 (11th Cir. 2010). "When a party has given clear answers to unambiguous questions

---

[9] Plaintiff does not otherwise challenge the declaration of Sheila Phillips.

[10] To the extent that she seeks to exclude the declaration of Grace Hicks for Defendant's failure to timely disclose her, the Court has addressed that request in the previous section of this Memorandum Opinion and will not repeat its analysis here.

which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). The Court must apply the sham affidavit doctrine sparingly, though, "because of the harsh effect it may have on a party's case." *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1316 (11th Cir. 2007) (quoting *Rollins v. TechSouth*, 833 F.2d 1525, 1530 (11th Cir. 1987)). For example, the Court should not use the sham affidavit doctrine to disregard a declarant's testimony where the declarant expressed a lack of certainty or recall during his or her deposition. *See id.* at 1316-17 (holding that plaintiffs' written averments about uncompensated work time should not be disregarded as shams where the plaintiffs expressed a lack of certainty during depositions). Further, not every item that could serve as the basis to impeach a party-witness with earlier deposition testimony will lead to that party-witness's testimony being struck. A slight contradiction or an arguable contradiction is not enough. If portions of an affidavit are inadmissible, the Court will disregard the inadmissible testimony and consider the admissible testimony from that affidavit in analyzing the summary judgment motion. *Lee v. Nat'l Life Assur. Co. of Canada*, 632 F.2d 524, 529 (5th Cir. 1980).

The Court has reviewed the deposition testimony that Plaintiff says is

contradicted by Loveless's declaration and finds that none of the instances cited actually is a "clear contradiction," either because the prior testimony was of a failure to recall, or because Plaintiff otherwise has not explained how the deposition testimony's <u>materially varied</u> from his declaration. The Court will deny the motion to strike the challenged portions of his declaration as "sham."

The Court reaches the same conclusions after reviewing the cited-by-Plaintiff <u>deposition</u> testimony of Phillips in comparison to the cited-by-Plaintiff <u>declaration</u> testimony of Phillips. The Court will deny the motion to strike her declaration.

Plaintiff has also objected to portions of the declarations of Loveless and to portions of the declaration of Grace Hicks as hearsay, unsupported ultimate conclusions, and/or irrelevant. Specifically, as to the Loveless Declaration, Plaintiff states that it contains

> 9 hearsay statement of the following individuals: (1) Board employees (Doc. 35-27, p. 4, ¶ 3); (2) Pat Strange (Doc. 35-27, p. 4, ¶ 3); (3) Mr. Butler (Doc. 35-27, p. 4, ¶ 4); (4) Phillips (Doc. 35-27, p. 5, ¶ 2); (5) the Board (Doc. 35-27, p. 6, ¶ 1); (6) Ms. Hanson (Doc. 35-27, p.6, ¶ 1); and (7) other VHHS employees(Doc. 35-27, p.7, ¶2).

(Doc. 54 at 12-13).

The Court has reviewed all of these pages and has found only three occasions when Loveless repeats something he was told (a necessary precondition for a hearsay challenge of this type). The first occasion is when he says: "I received multiple

complaints from several Board employees, including Pat Strange, concerning Smith's habitual tardiness or other employees having to cover Ms. Smith's desk in the mornings in her absence. Strange complained on several occasions that she was unable to timely start her duties for the day because she had to cover Smith's desk by assisting someone who called or stopped by the front office before Ms. Smith arrived." (Doc. 35-27 at 4). These statements are not being offered for the truth of the matter asserted (by others who spoke to Loveless). They are not hearsay and will not be excluded.

The second occasion is when he says: " Ms. Smith acknowledged that this was an area which needed improvement during our meeting to go over the evaluation." (*Id*. at 5). This statement is a party admission and, by rule, is <u>not</u> hearsay. FED. R. EVID. 801(2)(A). It will not be excluded.

The third occasion is when he says: "On the one occasion Ms. Smith said 'They always treat me this way,' she did not say that she felt that any alleged mistreatment was motivated by discrimination based on her race or age." (*Id*. at 7). Again, this is a statement by Plaintiff. Additionally, it is not offered for the truth of the matter asserted, and accordingly is not hearsay. It will not be excluded.

Plaintiff also complains that "Loveless testifies about what observations Kevin Butler, Assistant Principal, could or could not make when Kevin Butler was walking

the school building or property." (Doc. 54 at 13) (citing doc. 35-27 at 4, ¶4). Based on Loveless's familiarity with the school building and property, this objection is without merit. At most, it goes to weight, and not admissibility. Plaintiff also states: "Loveless also provides vague testimony about 'if a person were in the lobby, his or her view of Ms. Smith's desk would have been obstructed by the wall and the door which separate the lobby from the front office. Further, an individual standing in the lobby by the front doors cannot see someone in the mail room.' " (Doc. 54 at 13) (citing doc. 35-27 at 5, ¶1). Again, this objection is without merit. Plaintiff also complains that "Paragraph 2 of page 5 of [the Loveless] declaration contains numerical percentages that are not supported by any data, nor does Loveless describe how he reached this number. He states[:] 'Over the course of her two year employment with the Board, Ms. Smith's time records establish that she was late 87% of the days.' There is no foundation for these numbers to determine whether there is supporting evidence or whether Loveless made the numbers up. These statements are admittedly based upon Loveless' belief and speculation and due to be struck." (Doc. 54 at 13-14). The Court finds nothing speculative about these statements. They will not be excluded.

Plaintiff asserts that the following statements by Loveless constitute "ultimate legal conclusions under the guise of facts". (Doc. 54 at 13) "When discussing

Plaintiff's conversations with [him], he asserts 'she did not say that she felt that any alleged mistreatment was motivated by discrimination based on her race and age.' " (*Id*.). This objection is without merit. At most, the statement is Loveless's opinion about the content of statements to him by Plaintiff. The opinion of a lay witness is permitted, even on the ultimate issue of a case, if the testimony is based on personal observations. *Carter v. DecisionOne Corp. Through C.T. Corp. Sys.*, 122 F.3d 997, 1005 (11th Cir. 1997). The statement will not be excluded.

Plaintiff also seeks to have the Court strike portions of the declaration of Grace Hicks as "hearsay and statements that lack personal knowledge or irrelevant information by Hicks." (Doc. 54 at 17.). More specifically, Plaintiff says: "Hicks states she 'understood' her job duties were in relation to Connie Thomas and Anita Smith." (*Id*.). This is not hearsay. Hicks has the requisite familiarity regarding how to perform her job duties, including knowing what they were in relation to those of co-employees. The statement will not be excluded.

Plaintiff further states that "Hick's [sic] declaration contains hearsay. She testifies to three different lines in her declaration regarding what Pat Strange told her or did not tell her and that she never felt (as a white person) that Strange mistreated her. (*Id*.). The three "lines" of Hicks's declaration that mention Strange are "I was never told by Pat Strange not to cover Ms. Smith's desk for her while she went to

lunch or at any other time. I have never heard Ms. Strange make any comments I felt were racist." (Doc. 35-28 at 2). This is not hearsay. Plaintiff overreaches when she says this testimony is regarding "what Pat Strange told her." It is only regarding what Pat Strange did <u>not</u> tell her (and Hicks's feelings). The statements will not be excluded.

Plaintiff next complains that "Hicks also provides testimony about her time sheets and provides a different starting time than that discussed by her supervisor." (Doc. 54 at 17) (citing doc. 35-28 at 3,¶1). Plaintiff seems to argue that a Court should exclude any testimony by one witness that is different that the testimony of another witness. This argument is without merit or logic. The statements will not be excluded.

Plaintiff argues that "Hicks also provides the opinion and 'understanding' that she is one year older than Smith. . . . This testimony is not based on personal knowledge and is due to be struck." (Doc. 54 at 17) (citing doc. 35-28 at 3, ¶1). The Court agrees. Testimony based solely on a witness's understanding is comparable to belief testimony and inadmissible under Rule 56. *E.g., Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1377 (9th Cir. 1978) (explaining that a witness's testimony based on understanding was insufficient to show that the witness could present competent testimony at trial); *Rolison v. Sterling*, No. 08–0389–CG–M, 2009 WL 2514294, at

14

*5-6 (S.D. Ala. Aug. 13, 2009) (Granade, J.) (striking an averment that began with a qualifying phrase based on the affiant's understanding). This statement will be excluded.

Plaintiff also complains that "Hick's [sic] also reviews and provides testimony on time sheets that she has provided that have not been certified by [Defendant] as business records. This testimony is due to be struck as speculation and conjecture." (Doc. 54 at 17). The Court disagrees. The statements will not be excluded.

## C.    Admissibility of Plaintiff's Exhibit 2

Defendant has moved (doc. 60) to strike Plaintiff's Exhibit 2 to her opposition to the Motion for Summary Judgment. The exhibit is the "Wage and Hour Handbook" for the Vestavia Hills City School System. (Doc. 44-2). Defendant says that Exhibit 2 is irrelevant because it states, on its face, that it was not effective until August 10, 2015 (*see* doc. 44-2 at 1), which is after the date the adverse employment action — the nonrenewal of Plaintiff's contract — occurred. Plaintiff says, in effect, without citation to any authority, that Defendant's counsel tricked her and therefore Defendant is "estopped" from seeking to strike this exhibit. (Doc. 72 at 7). Defendant does not deny its failure to produce a time-appropriate version of Plaintiff's Exhibit 2. Defendant responds that Plaintiff requested (after August 10, 2015) "manuals and policies which were currently in effect." (Doc. 77 at 2, ¶5)(emphasis supplied).

However, this is not accurate. In the request for production at issue (Request No. 6),

Plaintiff requested

> "Produce any and all employee handbooks, personnel policies and
> procedures, manuals, directives, memoranda or other VBOE documents
> regarding hiring promotion, progressive discipline, attendance,
> tardiness, discrimination, harassment, retaliation, non-renewal of
> contract, resignation, termination, salary, benefits and EEO policies, and
> any and all documentation of employee training on these policies and
> procedures <u>from January 1, 2011 to the present</u>."

(Doc. 53-4 at 7)(emphasis supplied).

Nonetheless, Defendant is correct that Plaintiff's Exhibit 2 is irrelevant. It will

be excluded. However, in ruling on the Motion for Summary Judgment, to the extent

that Defendant relies on its "wage and hour policies," the Court will consider

Defendant's failure to produce a responsive time-appropriate version of Exhibit 2.[11]

## D. <u>Admissibility of Challenged Portions of Plaintiff's Exhibits 5, 7, 9, 10, and 21</u>

Portions of Plaintiff's Exhibits 5, 7, 9, 10, and 21 to her opposition to the

Motion for Summary Judgment are "summaries." Defendant moves to exclude these

summaries as not proper under FED. R. EVID. 1006. Specifically, Defendant argues

that the records summarized are not voluminous, Plaintiff has failed to identify who

---

[11] The Court further notes that Defendant attached a copy of the relevant (by time period) policy manual as Exhibit H to its Motion for Summary Judgment. (*See* Doc. 35 at 9, n. 5; doc. 35-19).

prepared them, and they contain inaccurate assumptions. Defendant also seeks to exclude certain employee time records as not authenticated. (Doc. 61).

Plaintiff responds that the employee time records were produced by Defendant. (Doc. 73). Defendant quibbles with this response, but ultimately does not deny that they are Defendant's records. (Doc. 79).

As Plaintiff has shown that she will be able to authenticate the employee time records at trial, Defendant's request that the Court exclude them at summary judgment is without merit. The employee time records will not be excluded.

As to the summaries, Plaintiff states that they were prepared by a paralegal employed by her attorney and under that attorney's supervision and direction and therefore they can be authenticated at trial. The Court agrees and rejects Defendant's motion to the extent it is based on lack of authentication.

Federal Rule of Evidence 1006 provides that a party "may use a summary, chart, or calculation to prove the content of voluminous writings, records, or photographs that cannot be conveniently examined in court." Once admitted, a Rule 1006 summary is considered substantive evidence. *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1159 (11th Cir. 2004). Rule 1006 summary evidence can be submitted at the summary judgment stage. *See Mitchell v. Univ. of La. Sys.*, 154 F. Supp. 3d 364, 380 n. 8 (M.D. La. 2015) (deGravelles, J.) (citing *F.T.C. v. Hughes*,

710 F. Supp. 1520, 1524 (N.D. Tex. 1989) (Fish, J.)). For a summary to be admitted in court as substantive evidence, the proponent must provide a proper foundation for its admission, which should include the testimony of the witness who prepared it or supervised its preparation. *Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 31 (1st Cir. 2011). And, a summary admitted under Rule 1006 must be based on materials or documents that are themselves admissible under the Federal Rules of Evidence. *Peat, Inc.*, 378 F.3d at 1160.

As explained above, Plaintiff has now identified who prepared these summaries and who supervised their preparation. Further, the Court finds that the underlying documents are, indeed, voluminous. For example, Plaintiff's Exhibit 5 summarizes information from 337 time sheets. The first twelve pages of Plaintiff's Exhibit 7 summarizes information from 262 time sheets. The other challenged exhibits similarly summarize voluminous information. Accordingly, the exhibits meet this criteria of Rule 1006.

To the extent that Defendant objects that the summaries contain "assumptions," Plaintiff is correct when she says that assumptions are permissible. "[T]he essential requirement is not that the charts be free from reliance on any assumptions, but rather that these assumptions be supported by evidence in the record." *United States v. Norton*, 867 F.2d 1354, 1363 (11th Cir. 1989)(internal citations omitted). Plaintiff has

shown (doc. 73) evidentiary support for the assumptions. While there is evidence that differs from that evidentiary support, assumptions need not be supported by undisputed evidence in order to be admissible. The summaries will not be excluded.

### E.    Admissibility of Plaintiff's Exhibit 16

Defendant asks the Court (doc. 63) to exclude four documents contained within Plaintiff's Exhibit 16 to her opposition to Defendant's Motion for Summary Judgment. The basis for exclusion is that the documents are not authenticated. (*Id.*). Plaintiff says that they came from Defendant and thus can be authenticated at trial. (Doc. 74). Defendant agrees that it produced the documents, but says they do not mean what Plaintiff says they mean. (Doc. 80). This is classic argument at summary judgment, not a reason to exclude the documents from the record. The documents will not be excluded.

### F.    Admissibility of Plaintiff's Citations to Law Review Articles and Websites

Defendant asks the Court to exclude Plaintiff's citations to law review articles and websites as unauthenticated. (Doc. 64). Plaintiff fails to join issue, and responds only that these articles and websites show that Plaintiff's opinion that what happened to her was based on racial stereotypes is reasonable. (Doc. 75). Defendant replies that the "[P]laintiff has abandoned her hostile work environment claim" (Doc. 81 at 2, ¶3)

and thus the "reasonableness" of her opinions is no longer an issue in this case. Defendant further replies that Plaintiff's "use of information from an online 'transmedia storytelling site' and [*W*]*ikipedia* is akin to the use of newspaper articles and other informal literature." (Doc. 81 at 2, ¶4). The Court agrees. Plaintiff failed to respond to Defendant's motion insofar as it sought summary judgment as to her hostile work environment claim, and has therefore abandoned that claim. *See, e.g.*, *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.")

Additionally, the Court agrees that facts set out in law review articles and informal websites (as opposed to official government websites) are similar to facts set out in newspapers. As such, they are inadmissible hearsay and not subject, without more, to any exception, including judicial notice. *See Cofield v. Alabama Pub. Serv. Comm'n*, 936 F.2d 512, 517 (11th Cir. 1991)("That a statement of fact appears in a daily newspaper does not of itself establish that the stated fact is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' FED.R.EVID. 201(b)(2)."). Consistent with *Cofield* and the authority

cited by Defendant, these documents will be excluded.[12]

### G.    Defendant's Motion To Strike Portions of Plaintiff's Response Brief

Defendant has moved to strike (doc. 65) potions of Plaintiff's brief (doc. 43) in response to Defendant's Motion for Summary Judgment (doc. 34). To the extent that the motion seeks to exclude portions that reference law review articles and websites, consistent with the Court's ruling excluding law review articles and excerpts from websites as evidence, the Court will not consider Plaintiff's references to those items. To that extent, Defendant's motion will be granted.

The motion also seeks to have the Court exclude portions of Plaintiff's brief. The basis for this aspect of Defendant's motion is that Plaintiff's insertion of facts into the portion of her brief in which she disputes Defendant's statement of material facts is contrary to this Court's Uniform Scheduling Order Appendix II. That Order (doc. 10), at Appendix II, sets out the Court's requirements regarding motions for summary judgment and oppositions thereto. Regarding the "manner of stating facts" in briefs in support and opposition to such motions, that Order states as follows:

---

[12] *Ferguson v. Thomas*, 2016 U.S. Dist. LEXIS 91286 (N.D. Ala. July 14, 2016)(Proctor, J.), citing an explanation from the 11th Circuit in *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996), *aff'd sub nom*, *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 117 S. Ct. 1734, 138 L. Ed. 2d 1 (1997).

## D. Manner of Stating Facts

All briefs submitted either in support of or opposition to a motion must begin with a statement of allegedly undisputed relevant material facts set out in *separately numbered paragraphs*. Counsel must state facts in clear, unambiguous, simple, declarative sentences. All statements of fact must be supported by specific reference to evidentiary submissions.

### 1. Moving Party's Initial Statement of Facts

The moving party shall list in separately numbered paragraphs each material fact the movant contends is true and not in genuine dispute, and upon which the moving party relies to demonstrate that it is entitled to summary judgment. Each such statement must be followed by a specific reference to those portions of the evidentiary record that the movant claims supports it. FN 3.

FN. 3 Each statement of fact should be supported by its own evidentiary citation, regardless of the fact that more than one statement of fact allegedly is supported by the same specific reference to the evidentiary record or more than one statement of fact is contained in the same numbered paragraph.

### 2. Opposing Party's Statement of Facts

Each party opposing a summary judgment motion also must submit a statement of facts divided as follows.

### a. Response to Movant's Statement

The first section must consist of only the non-moving party's disputes, if any, with the moving party's claimed undisputed facts. The non-moving party's response to the moving party's claimed undisputed facts shall be in *separately numbered paragraphs* that coincide with those of the moving party's claimed undisputed facts. Any statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based. *All material facts set forth in the statement required*

*of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment.*

### b. Additional Undisputed Facts

The second section may contain additional, allegedly undisputed facts set out in separately numbered paragraphs that the opposing party contends require the denial of summary judgment. The second section of the opposing party's statement of facts, if any, shall be clearly designated as such. FN. 4. The opposing party should include only facts which the opposing party contends are true and not in genuine dispute.

FN. 4. Each statement of fact should be supported by its own evidentiary citation, regardless of the fact that more than one statement of fact allegedly is supported by the same specific reference to the evidentiary record or more than one statement of fact is contained in the same numbered paragraph.

### c. Additional Disputed Facts

The third section may contain additional, allegedly disputed facts set out in *separately numbered paragraphs* that the opposing party contends require the denial of summary judgment. The third section of the opposing party's statement of facts, if any, shall be clearly designated as such. Each statement of allegedly disputed facts must be followed by specific reference to those portions of the evidentiary record which both support and contradict the alleged fact. FN.5.

FN.5. The court recognizes that, in some circumstances, a party opposing a motion for summary judgment may want to set out facts which that party claims are true and supported by evidence, but cannot, in good conscience and consistent with Rule 11, say are undisputed. In such case, the party should include a separate section of fact statements, set out in short declarative sentences and individually numbered paragraphs, which are supported by some evidence but, nevertheless, are in dispute. When doing so, however, the party should include record citations which both support and contradict the alleged fact.

### 3. Moving Party's Reply

The reply submission, if any, shall consist of only the moving party's disputes, if any, with the non-moving party's additional claimed undisputed facts. The moving party's response to the non-moving party's additional claimed undisputed facts shall be in *separately numbered paragraphs* that coincide with those of the non-moving party's additional claimed undisputed facts. Any statements of fact that are disputed by the moving party must be followed by a specific reference to those portions of the evidentiary record upon which the disputation is based. *All additional material facts set forth in the statement required of the opposing parties will be deemed to be admitted for summary judgment purposes unless controverted by the statement of the movant.*

**The court reserves the right *sua sponte* to STRIKE any statements of fact or responsive statements that fail to comply with these requirements.**

(Doc. 10, Appendix II, at 16-19)(emphasis in original).

The Court thinks this Order is self-explanatory. The Court will enforce its Order as written. Accordingly, to the extent that Plaintiff's response in opposition to Defendant's Motion for Summary Judgment fails to comply with this Order, the Court will disregard such non-compliant portion(s).

## III.   SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks and citation omitted). The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings in answering the movant. *Id.* at 324. By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – it must designate specific facts showing that there is a genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the moving party's

evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249.

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citation omitted). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce "significant, probative *evidence* demonstrating the existence of a triable issue of fact." *Id.* (citation omitted) (emphasis added).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on

the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996). The second method a movant in this position may use to discharge its burden is to provide affirmative *evidence* demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering *evidence* sufficient to withstand a directed verdict at trial on the material fact sought to be negated. *Id.*

## IV.    FACTS[13]

### A.    <u>Plaintiff and Her Employment by Defendant</u>

Plaintiff is an African-American female, and is approximately fifty-one years of age.  She worked for the Birmingham Board of Education for twenty years as a secretary/bookkeeper and for the Bessemer Board of Education for another five years.

---

[13] The facts set out herein are the facts proffered by the parties. To the extent that a party has proffered a fact which is not disputed, it has been included herein, without citation. To the extent that a fact proffered by a party was disputed by another party, the Court first examined the proffered fact to determine whether the evidence cited in support of that fact actually supported the fact <u>as stated</u>. If it did not, the fact was not included. If it did, the Court then looked to see whether the evidence cited in support of the dispute actually established a dispute. If it did not, the Court presented the fact as proffered, with citation to the evidence supporting the fact as proffered. If the evidence did support a dispute, the fact was cast, as this Court must, in the light most favorable to the non-movant, with citation to the evidence supporting the fact in that light. If more explanation was needed, the Court included that information in an appropriate footnote. Some facts proffered by the parties, which the Court deemed irrelevant and/or immaterial, have been omitted. The Court did not include facts that were not offered in the manner required by Appendix II to the Court's Uniform Initial Order.

She retired from her position with Bessemer a couple of months before being hired by Defendant in 2013.

Wes Gordon ("Gordon") was the principal of Vestavia High School ("VHS") during the 2013-2014 school year. He interviewed Plaintiff for the position of secretary/registrar with VBE. Plaintiff was hired for that position and, for two years, Defendant employed her at Vestavia Hills High School ("VHHS"). During her interview, the principal explained to her the duties and hours for that particular position. The assigned hours were 7:00 a.m. to 3:00 p.m. (Doc. 35-1 at 42). Plaintiff acknowledges that she fully understood the duties which were assigned to her in the secretary/registrar position.

**B.  The 2013-14 School Year**

Gordon evaluated Plaintiff during the 2013-2014 school year. In each category of assessment, Gordon rated Smith's performance as either "Meets or Exceeds Requirements" or "Demonstrates Excellence."  During the 2013-14 school year, VHHS office staff included the following: Connie Thomas, the student attendance secretary,  who sat at the desk in the lobby assisting parents who came to check in or check out students and greeting visitors to the school; Plaintiff, who sat at the front desk in the main office and handled all of the other duties associated with a receptionist at a regular business office; Margie Nelson, the registrar, whose office

door opened to the main office and who handled residency and custody issues, maintenance of student files and report cards, and maintenance of the student data base; and Pat Strange, the secretary to the principal, whose office was around the corner and down a short hall from Plaintiff's desk, who performed secretarial duties for the principal. (Doc. 35-12 at 31-32; doc. 35-12 at 8, 47-48; doc. 35-15 at 85; doc. 35-27).

The two front desks, which included Plaintiff's desk and Connie Thomas's desk, needed to be covered at all times. In the opinion of the principal, the two most important positions in the front office of VHHS were the ones held by Connie Thomas and Plaintiff because they were the first employees that visitors encountered at the school. It was imperative that Plaintiff and Connie Thomas be at the school on time and perform their job requirements.

The thirty minute lunch break for the high school office staff varied, and there was no other break time during the day. (Doc. 35-1 at 44-45, 47, 55, 56). Either Margie Nelson or a student aide would cover Plaintiff's desk while she took her lunch break. If neither Margie Nelson nor an office aide were available, Pat Strange would cover Plaintiff's desk during her lunch break.

Plaintiff admits that she was not discriminated against because of her race or age during the 2013-14 school year. She also admits that she was not retaliated

against during the 2013-14 school year.

Wes Gordon evaluated Plaintiff during the 2013-2014 school year. In each category of assessment, Gordon rated Plaintiff's performance as either "Meets or Exceeds Requirements" or "Demonstrates Excellence."

### C.     Summer of 2014

Plaintiff alleges racial discrimination against her began during the 2014 summer.   According to Plaintiff, Strange "discriminated" against her by making belittling remarks and speaking negatively about her to other co-workers during the 2014 summer. (Doc. 35-1 at 64-65).   As an example, when Plaintiff's husband purchased a car, Plaintiff claims she overheard Strange say that Plaintiff's working in Vestavia enabled them to purchase the car.   Plaintiff admits that she was not discriminated against because of her age or retaliated against during the 2014 summer.

### D.     2014-15 School Year[14]

Plaintiff also performed the duties of secretary/registrar at VHS during the 2014-2015 school year.  Plaintiff completed the wage and hour on-line training on VBE's policy on September 18, 2014. Plaintiff completed online training provided

---

[14]  Plaintiff admits that she was not discriminated against because of her age during the first semester of the 2014-15 school year.

by the Board on discrimination awareness in the workplace, among other topics, in September and October 2014.

During that time, Margie Nelson ("Nelson") or Grace Hicks ("Hicks") covered Plaintiff's desk during her lunch breaks. (Doc. 35-12 at 71; doc. 35-28 at 1-2). When Plaintiff was late to work, Nelson or Pat Strange ("Strange") would typically cover Plaintiff's desk until she arrived, which included opening up the front office and assisting anyone who needed help. (Doc. 35-12 at 31, 34-35; doc. 35-13 at 110-111; doc. 35-27 at 2).

Tim Loveless (Loveless") replaced Gordon as the principal of VHS for the 2014-2015 school year. At the beginning of the 2014-2015 school year, the staff at VHS was the same as the previous year. In September 2014, after becoming Principal at VHS, Loveless learned about attendance problems with several teachers and staff. In September 2014, Loveless reviewed all of the time sheets, looking for a pattern of tardiness. Then, about every other month, he would look at those he considered had a pattern of tardiness.

After an initial review of all VHHS employees' time cards in September 2014 showed a pattern of tardiness with several employees, including Plaintiff, Loveless monitored those employees' time cards throughout the remainder of the school year. In monitoring Plaintiff's time cards, Loveless determined that over the course of her

two year employment with the Board, Plaintiff was late 87% of the time. Loveless never discussed tardiness with the individuals that he considered to have a pattern of tardiness.

On September 22, 2014, Phillips received an email from a parent complaining about the secretarial staff at VHHS and forwarded it to Loveless. Phillips expected Loveless to call the parent involved and to address the complaint with the secretarial staff. In the forwarding email from Phillips to Loveless, Phillips states: "This has been a common complaint of parents at VHHS - for years." Phillips was referring to the secretarial staff in general. She was not referring to Plaintiff. Loveless forwarded the email to Strange, asking her to "File please." Loveless did not believe that the email pertained to Plaintiff. Loveless had received complaints from parents "on just about everybody in the front office."

On November 18, 2014, Strange printed out the email complaint and placed it in <u>Plaintiff's</u> file. She did this despite the fact that the parent who sent the email never spoke with Strange and never identified Plaintiff as the secretary about whom the complaint pertained. (35-12 at 106-109, 117-118). Strange assumed that whenever a parent would complain about "the lady in the front office," that parent was complaining about Plaintiff. Strange made this assumption despite her claim that Plaintiff was frequently late and absent from her desk during the day.

The Board hired Hicks in October 2014 as an aide in the VHHS office. (Doc. 35-12 at 14-19; doc. 35-28 at 1). Prior to Hicks being hired by VBE, Plaintiff, as a registrar, would attend periodic secretary/registrar "iNow" meetings with Nelson. Prior to October 2014, Hicks had served as a contract employee performing data entry at VHHS. (Doc. 35-12 at 118-119; doc. 35-28 at 1).

Approximately one week after she started as an office aide, Hicks's hours changed from 7:00 a.m.-3:00 p.m. to 7:20 a.m.-3:20 p.m., and stayed that way for the remainder of the 2014-15 school year. (Doc. 35-28 at 3).

Strange never told a secretary or an office aide not to relieve Plaintiff for lunch. Strange also never directed any of the other secretaries at VHHS not to talk to Plaintiff.

During the second semester of the 2014-15 school year, Plaintiff claims that she told Meredith Hanson ("Hanson"), in passing, that she wanted to speak with her regarding some things, and Hanson said she did not have time and she would speak to her later. When Hanson asked Plaintiff on another occasion for an idea on what it was regarding, Plaintiff told her "it was about Ms. Strange and the way that things were transpiring in the office, the way I was being treated in the office by Ms. Strange, the way she was, you know, speaking with other co-workers to– and then, withdrawing from me, et cetera." (Doc. 35-1 at 107). Plaintiff allegedly gave Hanson

some of the examples described during her deposition where she claims to have overheard Strange talking about her. Plaintiff and Hanson never had a meeting where Plaintiff gave her "a more in-depth insight" into her allegations against Strange. (Doc. 35-1 at 108). There was no mention of race discrimination or a racially hostile work environment when Plaintiff complained about Strange's alleged actions to Hanson. Hanson informed Plaintiff that she would try to some have some conversations with her colleagues in attempt to figure out Plaintiff's feelings of mistreatment.

Hanson subsequently informed Strange that Plaintiff had told her that Strange was not treating her fairly and was being disrespectful towards her. Strange had no idea that Plaintiff felt that way, and she told Hanson that she would try to do better in her interactions with Plaintiff. Hanson informed Loveless that she had spoken to both employees about some disgruntled feelings among some of the co-workers in the front office, and Loveless mentioned that Strange was becoming impatient with Plaintiff's tardiness. Afterwards, Hanson informed Plaintiff she had spoken to Strange. Hanson never received a written grievance from Plaintiff regarding any of her allegations of mistreatment.

As an example of Strange's alleged discrimination of her, Plaintiff remembers an instance, although she does not remember when it occurred, when she showed

Nelson and Strange a picture of her brother's family, and she felt that Strange had an expression of "surprise and total resentment" that her brother was married to a white woman. (Doc. 35-2 at 9). Plaintiff admits that Strange did not say anything after viewing the picture, and Nelson made a positive comment, like "it was a beautiful family." (Doc. 35-2 at 11).

In another instance of alleged discrimination, Plaintiff claims she saw a post on Strange's Facebook account[15] of a college student wearing a t-shirt with a Confederate flag on it. Plaintiff never spoke to Strange about that Facebook post.

Plaintiff claims that she walked in on a conversation between Strange and a teacher regarding the high school's former flag, and when allegedly asked by Strange whether it made sense that the flag had been changed, Plaintiff responded "I know you're not asking me that" and walked out of the office. (Doc. 35-2 at 14).

Another instance of alleged discrimination by Strange was when Strange allegedly reiterated directions previously given to Plaintiff by the registrar, Nelson, and assistant principal, David Howard, to complete withdrawal paperwork on an African American student Plaintiff alleges was "homeless." (Doc. 35-2 at 22-23).While Plaintiff believed that the student did not have to be withdrawn, she did not

---

[15] Plaintiff and Strange were friends on Facebook.

advise the student's parents of her belief. Plaintiff never complained to Loveless, her immediate supervisor, that she felt that the student's withdrawal was improper.

On another occasion, Plaintiff allegedly overheard Strange tell Loveless that she was sick and tired of Plaintiff. Immediately after overhearing the comment, Plaintiff confirmed to Loveless that she had overheard Strange and complained to Loveless that "that's not the first time. It always happens." (Doc. 35-1 at 71). Plaintiff did not mention race or age discrimination when she made these comments to Loveless.

On April 27, 2015, Loveless completed an evaluation of Plaintiff, even though she had been evaluated only eight months earlier. In that evaluation, Loveless rated Plaintiff's overall performance as "Meets or Exceeds Expectations." When Loveless met with Plaintiff about this evaluation, he did not tell her that, if her punctuality did not improve, he would recommend that she be terminated. Loveless did not consider the performance evaluation that he gave to Plaintiff on April 27, 2015, as a disciplinary action. When Plaintiff met with Loveless in his office to discuss his April 27, 2015, evaluation of her, she did not mention anything to him about Strange's alleged actions towards her.

In the April 27, 2015, evaluation, Loveless noted that "punctuality was an area in need of improvement." Plaintiff acknowledged that punctuality was an area in

which she needed to approve. Despite this notation on her evaluation and warning about her tardiness during the meeting, Plaintiff was still tardy 10 out of the next 13 days. When Plaintiff was tardy to work, other office employees, or sometimes even administrators, had to cover for her by assisting students, faculty, parents, vendors or others who called or came by the front office at 7:00 a.m. Plaintiff's tardiness was burdensome on Strange and Nelson because covering her duties at the front desk caused them to delay starting their job duties.

On April 27, 2015, Loveless evaluated Tracey Towns ("Towns"). He rated her as "Meets or Exceeds Requirements" as to "Reliability." Towns is white. Towns too had attendance issues. No one at VBE, including Loveless, ever discussed time and attendance with Towns. Towns was tardy 337 times between July 25, 2013 and June 8, 2015. When asked why he did not include a note on Towns' evaluation pertaining to her attendance issue, Loveless responded: "There was no reason to mark anything at that time other than she met and exceeded the requirements of her job position. . . . In my professional judgment, it was not needed for her." (Doc. 35-14 at 35). Towns' schedule required her to be at work from 7:45 a.m. to 3:45 p.m. She rarely arrived at work at her 7:45 a.m. scheduled start time. Towns cleared, each time, if she knew ahead of time, with her department head, that she would be late to work because she had to help her chronically ill father. If an unexpected instance arose when Towns

had to be late, she would attempt to alert her department head via text or phone call. Towns' desk did not need to be covered at all times, like the desks of the student attendance clerk or front office secretary.

Hicks was supposed to be at work between 7:00 a.m. and 3:00 p.m. Loveless concluded that Hicks had attendance issues by not arriving at 7:00 a.m. Loveless never counseled Hicks about her time and attendance. On April 27, 2015, Loveless evaluated Hicks. Loveless rated her as "Meets or Exceeds Requirements" as to "Reliability."

Nancy Smith is another employee who Loveless identified in September 2014 as having attendance problems. (Doc. 35-14 at 20). Nancy Smith's schedule required her to be at work from 7:00 a.m. to 3:00 p.m. Nancy Smith never arrived at work on time from July 7, 2014 through June 30, 2015. During that period she typically arrived more than one hour late. Loveless never issued any type of discipline or warning to Nancy Smith. Nancy Smith is white.(Doc. 35-14 at 82).

Deborah Walker was another employee who Loveless concluded had "some tardies." (35-14 at 73). Loveless never disciplined Walker.

Loveless reviewed the time sheets for Towns and Nancy Smith throughout the 2014-2015 school year. He can recall no reason why he did not issue some type of warning or disciplinary action to those two women. (35-14 at 81-82).

Loveless never told Hanson about the tardiness issues related to Nancy Smith, Walker, Towns, or Hicks. Hanson was not concerned about Nancy Smith's failure to arrive on time for an entire school year because of the "time that's put in."

In light of Plaintiff's habitual tardiness, and the resulting problems it caused, Loveless recommended that Plaintiff's employment not continue after the 2014-15 school year. Since Plaintiff was terminated, VBE has not hired a single African-American secretary, bookkeeper or attendance keeper at VHS. Loveless did not remember who he placed in Plaintiff's position after Plaintiff was terminated. VBE posted Plaintiff's position and then officially selected Hicks to replace Smith, effective June 9, 2015.[16] No one replaced Hicks after she replaced Plaintiff.

Loveless and Hanson met with all of the VHHS employees who Loveless planned to recommend that their employment not continue after the 2014-15 school year on May 19, 2015. Of that group, VHHS employees other than Plaintiff either gave them their resignation letters during the meeting or turned in resignation letters later, such that they were listed under the "resigned" column in the May 20, 2015, Board meeting minutes. Neither Loveless nor Hanson told the other VHHS employees that they could resign so it would not show as a termination. During that

---

[16]  On June 9, 2015, Hicks resigned from her 187-day clerical position effective May 22, 2015. (Doc. 44-13 at 2; doc. 44-14 at 2).

meeting, Plaintiff did not ask Loveless or Hanson if she could resign or retire instead of having her employment terminated.

A Board employee is responsible for advising her administrator of her intent to retire, by submitting a letter stating that she intends to retire, and submitting all paperwork to the Teachers' Retirement System. Plaintiff did not turn in a letter of resignation to Loveless prior to the May 20, 2015, Board meeting, when Loveless's recommendation was voted on by the Board.[17] Because Plaintiff did not advise Loveless that she intended to retire, the Board did not have the proper notice prior to the meeting that Plaintiff intended to retire when it voted on the superintendent's recommendation for termination. If Plaintiff had provided a letter of intent to retire before the May 20 meeting, her name would have been included in the list of names of individuals who were retiring from their employment with the Board.

## E.    Hiring Decisions After Plaintiff's May 2015 Termination

Open positions with the Board are posted, both online and at schools (and the central office), and applications are accepted through the Alabama Department of Education's "Teach in Alabama" online program. No Board policy dictates how an administrator is to select applicants to be interviewed for non-certified positions or

---

[17] While Plaintiff's personnel file shows that she completed some of the paperwork required by the Teachers' Retirement system on May 19, 2015, Plaintiff failed to provide written notice to the Board via a letter advising of her intent to retire.

which applicant to recommend for employment.

Applications for both the secretary/registrar position formerly held by Plaintiff, and the college counseling secretarial position, were accepted from one May 2015 posting, from which the Board hired two secretaries–Hicks and Jerri Tinney ("Tinney") (white female). Hicks was the best qualified applicant for the front desk secretary/registrar position at VHHS based on her prior work experience in the school office and her interview. (Doc. 35-23 at 2-3). Hicks and Tinney were over the age of forty at the time they were hired. When the secretary/registrar position at VHHS was posted, Burgess did not know Plaintiff, and Plaintiff had not yet filed her initial EEOC charge of discrimination.

There were 57 applicants for the 12 month bookkeeper position at VHHS, and Burgess interviewed four applicants for the position. Lisa Greer, who had been employed at VHHS as a 10 month bookkeeper and who had taken on extra duties while Plaintiff was sick, was the best qualified applicant for the position and was over 40 years old when she was hired.

When the 10 month bookkeeper position at VHHS was posted in January 2016, Burgess was still not aware that Plaintiff had filed her initial EEOC charge of discrimination. There were 49 applicants for the 10 month bookkeeper position at VHHS, and Burgess interviewed four applicants for the position. Plaintiff was one

of the applicants. (Doc. 35-23 at 5). Based on her then-current employment with the Mountain Brook school system as a school bookkeeper, Amy Schmidt, who is white, was the best qualified applicant for the position.

When the secretary/registrar position at Vestavia Hills Elementary East ("VHEE") was posted in February 2016, Dr. Mark Richardson, principal of VHEE, was not aware that Plaintiff had filed her initial EEOC charge of discrimination. There were 113 applicants for the secretary/registrar position at VHEE, and Richardson interviewed eight applicants for the position. Felicia Johnson, who is African American, applied for this position. She had an accounting degree and years of bookkeeping experience. Based on her excellent people skills and her experience managing large data bases, Johnson was the best qualified applicant for the position. Johnson is white. She was born in 1978.

Richardson was over forty years old at the time of the 2016 hiring recommendation. Phillips was over the age of forty at the time of her endorsement of the recommendations to the Board to hire Schmidt and Johnson.

## V. SUMMARY JUDGMENT ANALYSIS

As noted above, Plaintiff's Amended Complaint, to the extent neither dismissed by the Court's prior orders, nor abandoned at summary judgment, asserts three cause of action: Count One–racial discrimination brought under Title VII, 42

U.S.C. § 1981, 42 U.S.C. § 1981(a) and 42 U.S.C. § 1983; Count Two–age discrimination brought pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* (the "ADEA") and Count Three–retaliation pursuant to Title VII, the ADEA, and § 1981. Defendant has sought summary judgment as to all claims, asserting that Plaintiff cannot establish a prima facie case of race or age discrimination, either by Defendant's termination of her employment or by its selecting, post termination, other applicants for open positions. Defendant alternatively asserts that Defendant's actions were taken based on legitimate, non-discriminatory reasons. Defendant also asserts that Plaintiff cannot establish a prima facie case of retaliation because she cannot show that she suffered any adverse employment action as a result of any protected activity. Finally, Defendant argues that Plaintiff has abandoned any hostile work environment claim.

## A.  <u>Abandoned Claims</u>

As stated above Defendant has moved for summary judgment as to <u>all</u> of Plaintiff's claims. In response, Plaintiff does not discuss her hostile work environment claim at all. Accordingly, the Court considers this claim to be abandoned. *See, Brackin v. Anson*, 585 F. App'x 991, 994 (11th Cir. 2014) ("The parties bear the burden of formulating arguments before the district court, and 'grounds alleged in the complaint but not relied upon in summary judgment are

deemed abandoned' and will not be considered on appeal.") (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995)). Summary judgment will be granted as to Plaintiff's claim that she was subjected to a hostile work environment.[18]

## B. Employment Discrimination Claims

The parties initially dispute whether Plaintiff's employment discrimination claims are to be analyzed as single-motive or mixed-motive claims. Defendant says they are single-motive claims based on circumstantial evidence. The Court agrees. The Court also agrees that, while it looks to all of the evidence, here it is appropriate to analyze Plaintiff's claims under the familiar *McDonnell-Douglas* framework.[19] This is so because Plaintiff has <u>failed to present</u> any evidence of discriminatory animus other than that contemplated by that framework. Specifically, Plaintiff's prima

---

[18] Count One of the Amended Complaint could be fairly read as containing only a race discrimination claim based on Plaintiff being subjected to a <u>hostile work environment</u>. (*See* doc. 21 at 20, ¶61 ("Plaintiff was required to work in a racially hostile environment"), at 22-23, ¶71 ("VBOE subjected Plaintiff to a racially hostile work environment, including singling her out by ostracizing her, ignoring her, excluding her from secretarial meetings, denying her breaks and time to eat lunch, condoning racially offensive conduct by others and defending the use of Confederate symbols"), ¶72 ("Plaintiff's racially hostile work environment caused her great distress, humiliation[,] and embarrassment"). While Count One discusses Plaintiff's termination (*see* doc. 21 at 23, ¶73), it explains that she was terminated in <u>retaliation</u> for her "complaints about a hostile work environment." That claim is therefore encompassed in Count Three. However, because the parties have treated Count One as containing a separate disparate treatment claim, the Court has also.

[19] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

facie case rests on the following.

> Smith belongs to a racial minority, African-American; she was subjected
> to an adverse job action (termination); she was qualified for her job; she
> was replaced by Hicks, a white woman; and other white employees who
> engaged in the same or similar conduct [tardiness] were not terminated.

(Doc. 68 at 28).[20]

Despite Plaintiff's assertions that the 1991 amendments to Title VII have somehow called into question "the continuing validity of the *McDonnell Douglas* paradigm for assessing evidence" (doc. 68 at 27), that framework is indeed appropriately applied to <u>her</u> discrimination claims <u>based on the evidence presented in this case</u>. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011), citing *Burke–Fowler v. Orange County*, Fla., 447 F.3d 1319, 1325 (11th Cir.2006) for the proposition that the *Burke-Fowler* court "affirm[ed] the district court's grant of summary judgment because plaintiff 'failed to establish valid comparators and *presented no other circumstantial evidence suggesting racial discrimination*' " (emphasis added in *Smith v. Lockheed-Martin*)); *see also*, *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1354, 191 L. Ed. 2d 279 (2015) (application of *McDonnell Douglas* framework extended to "an individual pregnant

---

[20] In other words, despite challenging the validity of the *McDonnell Douglas* framework, Plaintiff then relies on that framework to show that she has established a legally sufficient *prima facie* case.

worker who seeks to show disparate treatment through indirect evidence").

The Eleventh Circuit has noted:

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discharge or otherwise discriminate against an employee because of his race. 42 U.S.C. § 2000e–2(a)(1). Similarly, 42 U.S.C. § 1981 prohibits race discrimination in employment by providing that all persons shall have the same right to make and enforce contracts as white citizens. 42 U.S.C. § 1981(a). In the employment context, the elements of a race-discrimination claim under § 1981 are the same as those in a Title VII disparate-treatment claim. *Rice–Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 n. 11 (11th Cir. 2000).

The ADEA, in turn, makes it unlawful for an employer to discharge or otherwise discriminate against an employee because of his age. 29 U.S.C. § 623(a)(1). Specifically, the ADEA prohibits employment discrimination against individuals who are at least 40 years of age. *Id*. § 631(a).

Where, as here, a plaintiff puts forth only circumstantial evidence in support of [her] discrimination claims, we generally apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002); *see Sims v. MVM, Inc.*, 704 F.3d 1327, 1332–33 (11th Cir. 2013) (ADEA); *Smith v. Lockheed–Martin*, 644 F.3d 1321, 1325 & n. 14 (11th Cir. 2011) (Title VII and § 1981).

Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Joe's Stone Crabs, Inc.*, 296 F.3d at 1272. If the plaintiff establishes a prima facie case, he creates a rebuttable presumption that the employer unlawfully discriminated against him. *Id*. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Id*. If the employer satisfies this burden of production, the burden shifts back to the plaintiff to demonstrate that the

46

proffered reason is merely a pretext for unlawful discrimination. *Id*. at 1272–73. Although the burden of production shifts back and forth, the ultimate burden of persuasion always remains with the plaintiff. *Id*. at 1273.

*Benjamin v. SNF Holding Co.*, 602 Fed.Appx. 758, 761–62 (11th Cir. 2015).

Under the McDonnell Douglas framework, to prevail on a claim of failure to promote, a plaintiff may establish a prima facie case of [race] discrimination by showing that: (1) she is a member of a protected class; (2) she was qualified and applied for the promotion; (3) she was rejected despite her qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted.

*Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004).

To establish a prima facie case under the ADEA, the plaintiff bears the burden of proving that (1) [s]he was a member of the protected class (i.e., at least 40 years old at the time of the adverse employment action); (2) [s]he was subject to an adverse employment decision; (3) the position [s]he sought was filled by a substantially younger person; and (4) [s]he was qualified for the position. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1043 (11th Cir. 2000) (en banc). Age discrimination claims also require that the plaintiff ultimately show that [her] age was the "but-for" cause of the adverse employment decision. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009).

*Suarez v. Sch. Bd. of Hillsborough Cty., Fla.*, 638 Fed.Appx. 897, 899 (11th Cir. 2016).

Accordingly, Plaintiff's assertions to the contrary notwithstanding (doc. 27 at pp. 26-28), she has the burden to establish a prima facie case of discrimination by presenting evidence that (1) she is a member of a protected class (race or age over

47

40); (2) she was qualified for the position (that she was terminated from or that she applied for); (3) she was terminated or rejected despite her qualifications; and (4) other equally or less qualified employees who were not members of the protected class were not subjected to the adverse action (that is, were not terminated or, as to open positions that Plaintiff applied for, were hired).

## C. Termination of Employment Based on Race

Defendant seeks summary judgment as to Count One initially on the basis that Plaintiff has failed to show the required fourth element: "that [Defendant] treated similarly situated employees outside of her African American classification more favorably." (Doc. 35 at 26).[21]

Defendant has argued, and offered unrebutted sworn evidence, that Plaintiff and Connie Thomas were the <u>only</u> employees whose positions had to be physically occupied ("covered") at all times during their working hours.[22] Similarly unrebutted by Plaintiff are Defendant's arguments and evidence that Connie Thomas was not

---

[21] Defendant concedes that Plaintiff has shown the first three elements.

[22] In the portion of her response brief in which Plaintiff admits or disputes Defendant's statement of facts, Plaintiff states that Defendant's fact numbered 22 is "Undisputed." (Doc. 68 at p. 4). Defendant's fact numbered 22 states: "The two front desks, which included Plaintiff's desk and Ms. [Connie] Thomas'[s] desk, needed to be covered at all times." Plaintiff points to no evidence that the desks assigned to any of the employees she does discuss in her brief similarly needed to be covered at all times, or refuting Defendant's assertions that, when Plaintiff was at lunch, other employees "cover[ed] the plaintiff's desk." (Doc. 35 at 13, #26 and #27).

excessively tardy.

Plaintiff totally ignores this argument and fails to dispute these facts.[23] Whether this is because she cannot refute them or whether this is because she believes that the law of this Circuit no longer requires her to show that a "similarly situated" employee was treated more favorably, her failure is, on this circumstantial evidence case, fatal.

Plaintiff never even mentions Connie Thomas in the argument portion of her opposition brief. She fails to point to any evidence of excessive tardiness by Connie Thomas. Also notably absent is any argument that (much less an explanation why) Connie Thomas was not similarly situated to Plaintiff, but the individuals she does discuss (Anita Smith, Tracey Towns, Grace Hicks, and Nancy Smith) are instead the appropriate comparators. Rather, she argues that

> The record in this case establishes that numerous employees were frequently tardy. Many of the white employees where tardy more frequently than [Plaintiff]. But only [Plaintiff], the black employee, was terminated because of her tardiness. White employees, including a white employee, who rarely arrived at work on time, and another employee who never arrived on time, not only were not terminated, or even disciplined, but were actually recommended for tenure.

(Doc. 68 at p. 31). However, it does not matter how Defendant treated other white employees unless those employees were similarly situated to Plaintiff. As the Eleventh Circuit has explained

---

[23] Plaintiff does dispute what she calls "inferences."

As part of the Title VII plaintiff's prima facie case, the plaintiff must show that his employer treated similarly situated employees outside his classification more favorably than herself. To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects. In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. *If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present.*

*Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (internal citations omitted) (emphasis in original).[24]

Plaintiff's inclusion of Grace Hicks, the person who replaced Plaintiff after Plaintiff was terminated, as a proper comparator for her wrongful termination based on race claim, is confusing. The central issue that a plaintiff must establish in a race discrimination claim is that race improperly motivated the employer's adverse action; here, Plaintiff's termination. But, Grace Hicks was not hired until after Plaintiff was discharged. Accordingly, Defendant could not have had notice of Hick's (future) tardiness at the time that it terminated Plaintiff. Accordingly, Grace Hicks is not a

---

[24] Important to this analysis is the fact that Plaintiff indeed had a proper comparator: Connie Thomas. The Court recognizes that a " 'plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case.' *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Even without similarly situated comparators, 'the plaintiff will always survive summary judgment if he [or she] presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent.' *Id*." *Lewis v. City of Union City*, 877 F.3d 1000, 1018 (11th Cir. 2017).

proper comparator for purposes of Plaintiff's prima face case. "Employees are not 'similarly situated' if management is aware of one's improper conduct, but not aware of the others' conduct." *Amos v. Tyson Foods, Inc.*, 153 Fed. Appx. 637, 647 (11th Cir.2005); *accord Summers v. City of Dothan*, 444 Fed.Appx. 346, 350–51 (11th Cir.2011); *cf. Jones v. Gerwens*, 874 F.2d 1534, 1542 (11th Cir. 1989) (for his prima facie case, the plaintiff must show that the decision-maker "was aware of prior [similar acts of misconduct] ..., and that the known violations were consciously overlooked.")

Under the *McDonnell Douglas* framework, a plaintiff must first create an inference of discrimination through her prima facie case. *Vessels v. Atlanta Ind. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005). On this record, Plaintiff has failed to present a prima facie case of race discrimination as to her termination. Summary judgment will be granted to Defendant as to this claim.

D.    **Failure to Hire Based on Race and/or Age**

Because Plaintiff's race and age discrimination claims for Defendant's failure to hire her (after her termination) also are founded upon circumstantial evidence, they too are subject to the *McDonnell Douglas* burden-shifting framework discussed in the prior section of this opinion. *See Trask v. Secretary, Dep't of Veterans Affairs*, 822 F.3d 1179, 1191 (11th Cir. 2016). That framework, in the failure-to-hire context,

requires a plaintiff to establish a prima facie case by showing: (1) she was a member of a protected class (race and/or age); (2) she applied and was qualified for a position for which Defendant was accepting applications; (3) despite her qualifications, she was not hired; and (4) the position was filled by a person outside of the plaintiff's protected class. *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir. 1999) (citing *Welborn v. Reynolds Metals Co.*, 810 F.2d 1026, 1028 (11th Cir.1987) (per curiam)).

Defendant assumes, *arguendo*, that Plaintiff can establish her *prima facie* case on each of her two failure-to-hire claims.(Doc. 35 at 28). Accordingly, so does this Court. Because a *prima facie* case creates an inference of discrimination, the burden is on Defendant to show that it had legitimate race and age-neutral bases for its hiring decisions. Defendant asserts that it has done so, and that it is entitled to summary judgment on the theory that Plaintiff has not presented substantial evidence of pretext. (Doc. 35 at 28-30; 34-40).

Defendant's asserted reason for not hiring Plaintiff is that it "hired the best applicants for the registrar position at VHEE and the 207 day bookkeeper position at VHHS, based on the recommendations of the principals at those schools." (*Id*. at 28). Plaintiff's relevant argument in response is that "Phillips has testified, as [Defendant's] representative, that [Plaintiff] was more qualified than at least one of

the individuals hired ...." (Doc. 68 at 39-40).[25]

However, the testimony upon which Plaintiff presumably relies[26] does not state

what she says it does. In the fact section of her response, Plaintiff states:

> 71. *** [Dr. Sheila] Phillips admitted that Ms. Smith was more qualified for the registrar job than Missy Johnson and that Missy Johnson did not have the requisite experience.(35-7:215:7-23.)

(Doc. 68 at 25). The following is the full question-and-answer exchange which

Plaintiff cited in that portion of her brief:

> Q.    Do you think Ms. Smith had more experience as a registrar/secretary in the school system than Missy Johnson?
>
> A.    As described in her resume versus Ms Johnson's application, yes.
>
> Q.    You see on page - - Plaintiff's Exhibit 51, the second page, the experience that's required is minimum of two years of experience in an administrative office, preferably in an educational environment. Can you tell me how Missy Johnson even met the minimum qualifications?
>
> A.    I do not know. Having not been there, I do not know what might be absent from her application or the interview process that would have met those qualifications. I don't know that she did not

---

[25] Although this section of Plaintiff's brief deals with Plaintiff's retaliation claim, and not her failure-to-hire claims, it is the only portion of that brief that even arguably joins issue with Defendant's failure-to-hire argument. Accordingly, rather than find these claims abandoned, the Court has considered Plaintiff's arguments in this section in deciding the issue of summary judgment as to these claims.

[26] As Defendant points out, "Plaintiff does not provide a single evidentiary citation in support of the alleged 'facts' in this section of the Response." (Doc. 78 at 12). Indeed, Plaintiff does not even identify the position filled or the person hired.

articulate or they did not confirm that she lacked the two years of
experience in an administrative office. She may have.

(Doc. 35-7 at 69(215)-70(216)). This lack of knowledge by Phillips, who did not hire

or make hiring recommendations, is not an admission by Defendant that Plaintiff in

fact was more qualified than Missy Johnson. This is particularly true in light of

Plaintiff's failure to dispute the following fact set out in Defendant's initial brief.

> 104.   Based on her excellent people skills and her experience managing
>         large data bases, Missy Johnson was the best qualified applicant
>         for the position. (Ex. I, Aff. of Richardson).

(Doc. 35 at 24).

Although Plaintiff claims that the reason offered by Defendant is a mere pretext

for discrimination, she fails to point to any evidence that shows a genuine issue of

fact as to pretext. *See, Ash v. Tyson Foods, Inc.*, 392 F. App'x 817, 825 (11th Cir.

2010), *opinion vacated on reconsideration on other grounds*, 664 F.3d 883 (11th Cir.

2011) ("The law of this circuit is that a plaintiff must make an evidentiary showing

creating a genuine issue of fact as to pretext for each of the defendant's proffered

reasons, not merely for some or most of them.") (citing *Chapman v. AI Transp.*, 229

F.3d 1012, 1024-25 (11th Cir.2000)). "'This evidence must reveal 'such weaknesses,

implausibilities, inconsistencies, incoherencies or contradictions in the employer's

proffered legitimate reasons for its actions that a reasonable factfinder could find

them unworthy of credence.'" *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir.2004)); *see also*, *Haugabrook v. Cason*, 518 F. App'x 803, 807 (11th Cir. 2013) (same). "A proffered reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'" *Haugabrook*, 518 F. App'x at 807 (quoting *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1349 (11th Cir.2007)).

Defendant has asserted, and supported with admissible evidence, that it had a valid business reason to hire Missy Johnson and not Plaintiff. Plaintiff has failed to come forward with substantial evidence of pretext.[27] At most, she has pointed to evidence that Plaintiff was more qualified than Missy Johnson in some respects. This is not sufficient to establish pretext. *See Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir. 2001) ("The relevant inquiry ... , then, is not to judge which employee was more qualified, but to determine whether any disparity between [Plaintiff's] and [Missy Johnson's] qualifications is so great that a reasonable fact-finder could infer that [Defendant] did not believe [Missy Johnson] to be better qualified.").

---

[27] As explained in footnote 25 *supra*, the Court stretched to find that Plaintiff had met Defendant's asserted non-discriminatory reason head-on as to any position at issue. The Court finds that Plaintiff has totally abandoned any failure-to-hire claim as to any position other than the one for which Missy Johnson was hired.

Accordingly, the Court finds that Defendant is entitled to summary judgment as to Plaintiff's failure-to-hire claims.

### E.  <u>Retaliation</u>

Under Title VII of the Civil Rights Act of 1964, 78 Stat. 255, as amended, 42 U.S.C. § 2000e–3(a), it is unlawful "for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." Like her discrimination claims, Plaintiff's retaliation claims are based solely on circumstantial evidence. Thus, they also properly are analyzed under the *McDonnell Douglas* framework. *Thomas v. CVS/Pharmacy*, 336 F. App'x 913, 915 (11th Cir. 2009) ("As with substantive discrimination claims, a retaliation claim based on circumstantial evidence is analyzed according to the McDonnell Douglas framework." *Thomas v. CVS/Pharmacy*, 336 F. App'x 913, 915 (11th Cir. 2009); *see also Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir.1999) (applying McDonnell Douglas-type analysis to retaliation claims).

Plaintiff bears the initial burden of establishing a prima facie case of retaliation, which he may do by "presenting evidence showing that (1) [s]he engaged in statutorily protected conduct, (2) the employer took action that would have been

materially adverse to a reasonable employee, and (3) there is a causal connection between the protected conduct and the adverse employment action." *Walker v. Sec'y, U.S. Dep't of Air Force*, 518 F. App'x 626, 627–28 (11th Cir. 2013) (internal citations omitted).

> To establish this causal connection as required for a prima facie case,

> "a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." Causation may be inferred by close temporal proximity between the protected conduct and the materially adverse action taken by the employer. We have held, however, that "in the absence of other evidence tending to show causation," a three-to-four month time gap between the protected conduct and the adverse employment action is insufficient to establish causation on its own.

(*Id*. at 628) (internal citations omitted).

Defendant asserts that "Plaintiff makes two claims of retaliation." (Doc. 35 at 42). The Court addresses each in turn.

### 1. *Retaliatory Termination*

Defendant states that the first retaliation Plaintiff alleges "occurred when her employment was terminated at the end of the 2014-15 school year, after she verbally and informally commented to Loveless and Hanson about feeling mistreated by her co-workers." (*Id*.). As described by Defendant, Plaintiff "claims she was retaliated against when her employment was terminated and her name listed on the Board

meeting minutes under the "terminated" column, instead of the "retired" or "resigned" columns of names." (*Id*. at 44). Defendant then argues that

> the Board had legitimate, nondiscriminatory reasons for terminating the plaintiff's employment in May 2015. Further, the plaintiff did not ask to resign or retire in lieu of termination and she did not submit a letter of resignation or a letter of retirement to the Board. (Ex. E, p. 99, l. 18-22; Ex. H; Ex. K). While she completed the retirement paperwork for the Teachers' Retirement System, she did not submit the letter of resignation to the Board or notify Mr. Loveless of her intent to retire. (Ex. H; Ex. K). The other VHHS employees who were listed in the May 20, 2015 Board meeting minutes as retired or resigned submitted a letter of intent to retire or letter of resignation. (Ex. E, p. 99, l. 23- p. 100, l. 4; Ex. F, p. 139, l. 19- p. 141, l. 11; p. 143, l. 15-21). Despite plaintiff's inclusion in the list of names of employees whose employment was "terminated," the plaintiff is currently employed by the Birmingham Board of Education as a school bookkeeper. (Ex. A, p. 14, l. 3-10)

> Based on the above, the plaintiff cannot provide prima facie evidence of retaliation, nor can she rebut each legitimate, nondiscriminatory reason for the termination of her employment ... with the Board to show that each is untrue and merely a pretext for discrimination. The evidence fails to show that each of the reasons for her termination and listing under the appropriate heading in the Board minutes was false and that the only real reason was race or age discrimination.

(*Id*. at 44-45).

Plaintiff failed to respond at all to this aspect of Defendant's motion. Accordingly, any claim by Plaintiff of retaliation arising out of her termination or her being listed as "terminated" has been abandoned. Summary judgment will be granted to Defendant as to any such claim.

## 2.    *Retaliatory Failure To Rehire*

Defendant also seeks summary judgment as to Plaintiff's claims that "the Board retaliated against her again when she was not interviewed or hired for two open positions for which she applied in 2016 after she filed her EEOC charge of race and age discrimination on August 26, 2015." (Doc. 35 at 42-43). Defendant points out that the dates when the alleged retaliatory acts of not re-hiring Plaintiff occurred in January and February 2016, that is, "five and six months after the filing of the EEOC charge." (*Id*.). The Court agrees that such a time lapse, "without more," is too great to show retaliation. (*See id*.).

Rather than meet this argument head-on, Plaintiff neither argues that the time lapse is not too great nor points to something "more" than temporal proximity. She says she "has filed numerous applications seeking to be reemployed by VBE. Despite her superior qualifications for a number of these positions, as admitted by Phillips, [] Smith has never even been interviewed for the jobs and the jobs have been awarded to less qualified individuals." (Doc. 68 at 38). She also argues

> The mere fact that a VBE supervisor can offer some explanation for who he hired out of the limited pool of interviewed applicants does not rebut Ms. Smith's evidence that she was wrongfully excluded from the pool of qualified applicants in the first place. Phillips has testified, as VBE's representative, that Ms. Smith was more qualified than at least one of the individuals hired by VBE. There is no question but Ms. Smith applied for that job and was not interviewed. VBE has not offered any

59

explanation as to why Ms. Smith was not even granted an interview for that position. This evidence, along with the fact that Ms. Smith's claim of discrimination was widely discussed with VBE's administration, is sufficient to survive summary judgment on Ms. Smith's retaliation claim.

(*Id*. at 38-39).

The Court initially notes that, as to this argument, Plaintiff cites <u>no authority</u>. She does not cite to any <u>evidence</u>. She does not cite to any <u>case</u> that she argues shows that the type of evidence she posits is sufficient to be the "something more" that she needs to proffer as a prima facie case of retaliation. Indeed, she does not even identify <u>which position</u> she was not hired for based on retaliation.

It appears that Plaintiff is arguing that a *prima facie* case of retaliatory failure to rehire is shown whenever a former employee is not rehired after filing a charge of discrimination, no matter how much time elapses between the filing of the charge and the event of not interviewing or rehiring that former employee, and despite a failure to show that Defendant's explanations for hiring other individuals are pretextual.

However, as explained in the Court's analysis of Plaintiff's discrimination claim based on her not being rehired,

[t]he Defendant has asserted, and supported with admissible evidence, that it had a valid business reason to hire Missy Johnson and not the Plaintiff. The Plaintiff has failed to come forward with substantial

evidence of pretext.[28] At most, she has pointed to evidence that the Plaintiff was more qualified than Missy Johnson in some respects. This is not sufficient to establish pretext. *See Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir. 2001) ("The relevant inquiry ... , then, is not to judge which employee was more qualified, but to determine whether any disparity between [Plaintiff's] and [Missy Johnson's] qualifications is so great that a reasonable fact-finder could infer that [Defendant] did not believe [Missy Johnson] to be better qualified.") Accordingly, the Court finds that Defendant is entitled to summary judgment as to Plaintiff's failure-to-hire claims.

(*Supra*, pages 55-56).

Consistent with this analysis, and absent any on-point evidentiary or legal citation by Plaintiff in opposing summary judgment as to this claim, the Court will grant summary judgment to Defendant as to Plaintiff's retaliation claims.

## VI.    CONCLUSION

Based on the foregoing, and to the extent noted, the various motions to strike by the parties will be **GRANTED** or **DENIED** as set out above.  Furthermore, the Defendant's Motion for Summary Judgment will be **GRANTED**, and this case will be **DISMISSED with prejudice**.  A Final Order will be entered.

---

[28] As explained in footnote 16 supra, the Court stretched to find that Plaintiff had met Defendant's asserted non-discriminatory reason head-on as to any position at issue. The Court finds that Plaintiff has totally abandoned any failure-to-hire claim as to any position other than the one for which Missy Johnson was hired.

**DONE** and **ORDERED** this 21st day of March, 2018.

**VIRGINIA EMERSON HOPKINS**
United States District Judge